# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2766

JEFFREY WHITE,

*Petitioner-Appellant*,

*v.*

DONALD GAETZ, Acting Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-2112—**Michael P. McCuskey**, *Chief Judge*.

ARGUED OCTOBER 5, 2009—DECIDED DECEMBER 21, 2009

Before EVANS and SYKES, *Circuit Judges*, and SIMON, *District Judge*.[1]

SIMON, *District Judge*. When a trial judge looks out over the courtroom and sees no one sitting there, it presents a practical problem when he or she is trying to com-

---

[1] The Honorable Philip P. Simon of the United States District Court for the Northern District of Indiana, sitting by designation.

plete jury selection. Illinois deals with this problem with a "bystander" venire statute which authorizes the judge to order the local sheriff to round up people and bring them to court so that jury selection can be completed. This process was used to select the final juror in the trial of Jeffrey White in which he was convicted of first degree murder. In this appeal from the denial of a habeas corpus petition brought pursuant to 28 U.S.C. §2254, White claims that the way in which the bystander venire was selected violated his constitutional right to have his jury selected from a fair cross section of the community. He seeks a new trial. The district judge denied the petition, and we affirm.

During jury selection of White's trial, after ten jurors had been seated, the pool of prospective jurors was exhausted. One of the two remaining slots was eventually filled by a member of the original jury pool and the selection of that juror is not in dispute in this appeal. But in order to fill the final seat the trial judge invoked Illinois' standby juror statute which provides:

> When by reason of challenge in the selection of a jury for the trial of any cause, or by reason of the sudden sickness or absence of any juror for any cause, the regular panel is exhausted, the court may direct the sheriff to summon a sufficient number of persons having the qualifications of jurors to fill the panel for the pending trial, but upon objection by either party to the cause to the sheriff summoning a sufficient number of persons to fill the panel, the court shall appoint a special bailiff to summon such person . . . .

705 Ill. Comp. Stat. 305/13. Under the authority of this statute, the judge directed the sheriff's office to recruit additional jurors. The process that the sheriff used was to call up various county supervisors and ask them to supply people to fill out the venire. White's counsel objected, but the court responded that it was up to the sheriff to determine who would be summoned. Although White's counsel objected to the process, he did not make a request that a special bailiff be appointed, as is permitted by the statute, until after the jury was already selected and the trial was about to begin.

The first bystander juror was excused for cause after stating that she worked for the sheriff in his records department, and that she knew the prosecutors in charge of White's trial and handled some paperwork for White's case.[2] The next standby juror questioned was an individual named Amy Carter. Ms. Carter was a receptionist at the Decatur Public Building Commission. To summon her, the sheriff's office called her boss asking for people who might be interested in serving on a jury. Her boss then asked Ms. Carter if she was willing to serve, and she said that she was. After a full voir dire

---

[2] Some of these facts come from the state court trial transcript. White filed a motion, objected to by the State, asking that we take judicial notice of the state court trial transcript. That motion is GRANTED. We agree that judicial notice is appropriate because White relied on the transcripts in his habeas petition before the district court, the Illinois Appellate Court relied on them after both parties cited them in their briefs, and they would assist this Court. *See* Fed. Rule App. P. 10(e)(2).

of Ms. Carter by both the trial judge and the parties, she was accepted as a juror by both sides. White neither challenged her for cause nor used one of his remaining available peremptory challenges to dismiss her, and there is absolutely nothing to suggest that Ms. Carter was biased in any way.

Before addressing White's claim, we will briefly review the facts which landed White in this mess. They read like a script from Quentin Tarentino. White and two others were hired by Corliss McSpadden to drive to Arizona to pick up a load of marijuana—50 pounds in all. McSpadden gave White money to buy the marijuana, but problems arose when White decided to steal the load instead of delivering it to McSpadden. Guys who deal in large quantities of drugs don't like being ripped off, and McSpadden was no different. He confronted White, pistol whipped him, ran over his cohort with a car and issued a death threat to White. At one point, White was actually kidnapped at gunpoint and threatened with death by two of McSpadden's buddies, Travis Williams and Andrew Murphy. White escaped, but he became convinced that Williams and Murphy were working for McSpadden and doing his dirty work in collecting on the drug debt. All of which prompted White to start carrying a gun.

Shortly after the kidnapping, White encountered Murphy for a second time at a county courthouse, and Murphy threatened him again. According to White, he left the courthouse but later returned with a friend and they proceeded to follow Murphy in his car. As fate would

have it, Murphy was heading to the home of Travis Williams, the other kidnapper. When White arrived at Williams' house, Williams and Murphy were out front. White, who was in the passenger's seat, reached out of the window and pointed a gun back over the roof of the car and shot towards Murphy and Williams. One of the bullets struck Williams in the head and killed him. White was arrested a few days later and eventually confessed to shooting Williams. He stated that he shot at Williams and Murphy out of fear. White claimed that he was just trying to scare them and that he did not mean to shoot anybody.

The jury convicted White of first degree murder and he was sentenced to twenty-eight years of imprisonment. The Illinois Appellate Court affirmed the judgment. *People v. White*, 819 N.E.2d 1239 (Ill. App. Ct. 2004). The principal arguments on appeal concerned the manner in which the bystander jurors were selected. First, White argued that the sheriff was not correctly appointed to summon the bystander jurors. The court made quick work of that argument finding that the Illinois statute authorized the sheriff to summon additional jurors. *Id.* at 1245. White then argued that a special bailiff should have been appointed to find bystander jurors, but the court found that his request for a special bailiff—coming after the jury had already been selected—was too late. Finally, the court found that the trial court did not abuse its discretion in finding that the sheriff's method of summoning jurors was within the discretion given to the sheriff under the statute. *Id.* at 1245-47. White filed a petition for leave to appeal to the Illinois Supreme Court, but the petition was denied.

White then filed a *pro se* post-conviction petition, which the Circuit Court of Macon County denied as "frivolous and patently without merit." (A. 109). The Illinois Appellate Court affirmed, and the Illinois Supreme Court later denied White's petition for leave to appeal. White next moved on to federal court where he filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Central District of Illinois. He raised five issues. The district court denied the petition, and this court granted a certificate of appealability limited to the issue of whether White's Sixth Amendment right to a fair and impartial jury was violated by the manner in which the sheriff summoned the bystander jurors. (A. 235). The district judge reasoned that there was no Sixth Amendment violation by having the sheriff select the bystander jurors since the sheriff was not involved in White's investigation and the county supervisors whom he called upon to get the bystander jurors had no interest in the prosecution.

The first issue is whether White fairly presented his federal constitutional claim regarding the selection of the standby venire to the state courts. A federal constitutional claim is procedurally barred if a petitioner fails to fairly present that claim in one complete round of state court review. *Baldwin v. Reese*, 541 U.S. 27, 29, 30-31 (2004). To determine whether a petitioner fairly presented a claim before the state courts, this Court looks to whether the petitioner: (1) relied on relevant federal cases applying constitutional analysis; (2) relied on state cases applying federal constitutional analysis to a similar factual situation; (3) asserted the claim in terms so par-

ticular as to call to mind a specific constitutional right; and (4) alleged a pattern of facts that is well within the mainstream of federal constitutional litigation. *Ellsworth v. Levenhagen,* 248 F.3d 634, 639 (7th Cir. 2001). Our task is to determine in practical terms whether the state courts were sufficiently alerted to the nature of White's federal constitutional claim. *Id.*

White's arguments before the Illinois Appellate Court and in the Illinois Supreme Court dealt exclusively with the application of the Illinois bystander statute. White did not rely on any federal constitutional provision and cited to no cases employing a constitutional analysis. Nor did he rely on any state cases applying a federal constitutional analysis to a similar factual situation. So the first two factors in deciding whether his claim was fairly presented to the state courts weigh heavily against White. And this much he agrees. (Appellant's Br. at 27.)

As to the third factor, White's claims do not bring to mind a "specific constitutional right." White contends rather broadly that his claims bring to mind Sixth Amendment and Due Process concerns. But he provides no persuasive authority to support that assertion. And White's prior briefing in the Illinois courts contains no references to federal case law, federal statutes, or any part of the United States Constitution. The focus of White's arguments before the Illinois courts was on the alleged improper application of the Illinois bystander statute, not on White's Sixth Amendment and Due Process rights. Thus, his arguments prior to his appeal

to the Central District of Illinois did not invoke federal law. While White did mention his "right to a fair trial before an impartial jury," he failed to explicitly invoke the federal right he now seeks vindicated—the right to have a venire that is chosen from a fair cross section of the community. Instead, that reference was to his claim under the Illinois bystander statute. Under these circumstances, an innocuous reference to a "right to an impartial jury" does not call to mind the federal right to have a venire selected from a fair cross section of the community. *See Baldwin*, 541 U.S. at 33 (a mere reference to "ineffective assistance of both trial court and appellate court counsel" did not properly invoke federal law because a state claim could arise with the same language).

As to the fourth factor, White has not alleged a pattern of facts that is well within the mainstream of federal constitutional litigation. White cites to a series of Supreme Court cases in an attempt to show that his case is in the mainstream of constitutional litigation. *See Duren v. Missouri*, 439 U.S. 357 (1979); *Castaneda v. Partida*, 430 U.S. 482 (1977); *Taylor v. Louisiana*, 419 U.S. 522 (1975). But these are in no way similar to the facts of this case. *Duren* and *Taylor* held that the systematic exclusion of women from a venire violated the fair cross section requirement of the Sixth Amendment. And *Casteneda* held that a system that selected jurors in a way that discriminated against Mexican-Americans was likewise unconstitutional. These facts are completely different from the facts of this case where the sheriff—in trying to fulfill his obligation under the Illinois bystander

venire statute—called upon government employees to round out a small portion of the venire. There was no systematic exclusion of anyone here, but instead the inclusion of governmental employees. So this pattern of facts is not within the mainstream of constitutional litigation as set out in cases like *Duren*, *Taylor*, and *Casteneda*.

In sum, White did not fairly present his constitutional claim to the Illinois courts. His beef in the state courts was with the manner in which the Illinois bystander statute was handled by the sheriff. He cited no federal constitutional cases, and there was nothing about his arguments in the state courts that would call to mind the specific constitutional right that he now says was violated. For these reasons, his claim is procedurally barred.

Even if we were to look past the procedural bar, White's claim fails. Under 28 U.S.C. § 2254(d), a writ of habeas corpus can be granted only if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. The United States Supreme Court has never held that a procedure to create a standby venire violates the defendant's constitutional rights. So the opinion of the Illinois appellate court was neither contrary to, nor involved an unreasonable application of, Supreme

Court precedent. *See Wright v. Van Patten*, 552 U.S. 120, 125 (2008).

White attempts to clear this hurdle by directing our attention to two of the Supreme Court cases discussed above—*Duren v. Missouri*, 439 U.S. 357 (1979) and *Taylor v. Louisiana*, 419 U.S. 522 (1975). But neither of these cases even come close to holding that the process used here to select the standby venire violates the Sixth Amendment. Again, *Duren* and *Taylor* involved the systematic exclusion of women from a venire. White contends that those cases are analogous because government employees—the group that was selected by the sheriff to be in the venire—are a distinctive group that is automatically biased in favor of the government, resulting in an unrepresentative and unfair venire. But White cites no authority for his broad contention that government employees are always biased in favor of the government, and it's difficult to see why that would necessarily be the case. In fact, there is nothing to suggest that Ms. Carter, the one juror who was selected from the standby venire, was biased. She was not challenged for cause by either side nor did White use one of his remaining peremptory challenges to strike her from the jury. So the comparison of this case to cases like *Duren* and *Taylor* is not very apt. Those cases address the systematic *exclusion* of a group of people (women) which led to a venire that was not representative of society. By contrast this case involved the systematic *inclusion* of a group of people (government workers) to fill out a small portion of the venire that did not result in a venire unrepresentative of society.

Neither *Duren* nor *Taylor* (nor any other Supreme Court case cited by White) address the question presented here—whether a violation of the fair-cross-section requirement may be based on the misapplication of a bystander venire statute. So the state court's decision to reject White's jury selection claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

White also points us to two cases from the Eighth Circuit to support his constitutional argument. *See Anderson v. Fey*, 715 F.2d 1304 (8th Cir. 1983); *Henson v. Wyrick*, 634 F.2d 1080 (8th Cir. 1980). *Anderson* involved a situation where a sheriff who had handled the criminal investigation selected the bystander jurors; and *Henson* involved a sheriff who chose only his acquaintances for the venire. Both courts held that where the sheriff participates in the investigation and selects bystander jurors based on subjective criteria, the defendant's right to a fair trial is violated.

There are a number of problems with White's reliance on *Anderson* and *Henson*. First, both were decided prior to the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. As discussed above, the AEDPA requires White to establish that the state court opinion was contrary to clearly established federal law, *as determined by the Supreme Court of the United States.* 28 U.S.C. § 2254(d)(1). *Wright*, 552 U.S. at 125; *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *Lieberman v. Thomas*, 505 F.3d 665, 672 (7th Cir. 2007); *Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999) (declining to consider Second Circuit precedent

because a "habeas petitioner must support his claim with a Supreme Court decision that clearly establishes the proposition essential to his position").

But even if *Hensen* and *Anderson* were somehow binding on us, they are distinguishable in any event. The sheriff who selected the bystanders in those cases had an interest in the outcome of the proceedings. The sheriff's office was the investigating agency in those cases, and in *Henson* the sheriff actually sought out his acquaintances to be in the jury pool. There was no such bias here. As the district court pointed out, the sheriff was not involved with the investigation, and there were no facts showing that the sheriff was biased when he recruited the standby venire. White claims that the sheriff was "inherently biased" against him because he is the chief law enforcement officer in the county. But when the sheriff does not participate in the investigation of the crime, his institutional interest becomes more attenuated. *O'Neal v. Delo,* 44 F.3d 655, 662 (8th Cir. 1995); *Holt v. Wyrick*, 649 F.2d 543, 546 (8th Cir. 1981).

In sum, the sheriff exercised his responsibility under the Illinois bystander statute by rounding out a small portion of the venire—enough to select the final juror—by calling upon supervisors in government offices to furnish potential jurors. The juror who was ultimately selected had no interest in the case and was in no way biased. White has failed to point us to any Supreme Court cases that hold that the sheriff's selection of a small portion of the venire makes the entirety of the venire not a fair cross section of society. And the Eighth

Circuit cases that he relies on are all distinguishable. White's right to an impartial jury selected from a representative cross section of the community was not violated.

We AFFIRM the judgment of the district court.