In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1833

FREDDIE L. BYERS, JR.,

*Petitioner-Appellant*,

*v.*

JAMES BASINGER, Superintendent
of the Wabash Valley Correctional Facility,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 08 CV 240—**Allen Sharp**, *Judge*.

ARGUED FEBRUARY 25, 2010—DECIDED JULY 9, 2010

Before CUDAHY, EVANS, and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge.* After a jury trial, the petitioner, Freddie Byers, Jr.,[1] was convicted of two counts of first-degree murder, one count of attempted murder and one

---

[1] According to the petitioner (and his father) the petitioner's name is Freddie Byers, III, and his father's is Freddie Byers, Jr. Given that the parties on appeal refer to petitioner as "Jr." and the caption is officially "Jr.," we use "Jr." in this opinion.

count of robbery. The Supreme Court of Indiana affirmed on direct appeal, *Byers v. Indiana*, 709 N.E.2d 1024 (Ind. 1999), and, after the Indiana Court of Appeals denied his petition for post-conviction relief, 878 N.E.2d 542, 2007 WL 4531828 (Ind. App. Ct. Dec. 27, 2007), the Indiana Supreme Court denied transfer, 891 N.E.2d 41 (Ind. 2008). The district court denied Mr. Byers' habeas petition, in which Mr. Byers argued that his trial counsel performed deficiently. *Byers v. Superintendent*, No. 3:08 cv 0240 AS, 2009 WL 537662 (N.D. Ind. Mar. 4, 2009). We granted Mr. Byers a certificate of appealability on the question whether he had been denied effective assistance of counsel. We affirm the district court's denial because, even if Mr. Byers successfully exhausted his claim, it lacks merit.

## I. Background

Mr. Byers was convicted based on the following events. On January 30, 1997, James Edison, a guest at Bennie Spears and Almeka Dodds' house in South Bend, opened the door to "Flint" (a/k/a petitioner Mr. Byers) and "Gill." Banter among the men quickly turned serious. Dodds, in the next room, heard Spears warning Flint not to point his gun at Spears and then heard it discharge. She entered to see Flint, who had visited their home a "whole bunch of times," holding a gun and Spears shot and wounded on the ground. Flint grabbed Dodds by the hair and demanded she tell him where the money was, while Gill locked Dodds' children in the bathroom. Flint instructed Gill to cut Edison's neck with a kitchen knife and to

take Dodds to the basement and shoot her in the head. Luckily for Dodds, Gill was unskilled at his first task, and Edison attempted an escape out the window. Both Flint and Gill pursued Edison and shot him. Back in the home, they fired bullets into the basement where Dodds hid, but did not hit her. She ran to a neighbor's house once she thought her house was clear. The police arrived to find Dodds' children locked in the bathroom, unharmed. Edison and Spears died of their wounds.

Dodds told the police the shooter she called Flint or Fred had crooked teeth and a scar on his face. Dodds also suggested that the police already had a picture of Flint from an incident at Flint's girlfriend's house on the evening of a prize fight. They did have such a photo, and Dodds identified Flint in an array.

At trial, Dodds was the prosecution's main witness. No physical evidence or usable fingerprints linked Mr. Byers to the offense. To demonstrate the errors in Dodds' initial description of Flint, Mr. Byers walked in front of the jurors to show them that his teeth were straight and his face scarless. During a test run of this walk before the jury entered, the trial judge asked:

"What's [Mr. Byers'] anklet thing? Is that visible? Mr. Byers, come over here please.

It's okay. That's not so bad. Okay."

At an evidentiary hearing in post-conviction proceedings, Mr. Byers contended that this "anklet thing" was a shackle or restraint. At trial, the court made no findings about Mr. Byers' need for shackles or restraints

in the courtroom. Indeed, there was no discussion of Mr. Byers' wearing restraints in court apart from the anklet-related comments of the trial judge.

Mr. Byers' trial was interrupted by several spectators' outbursts. In a sidebar prior to his opening statement, the prosecutor noted comments from the gallery—possibly by the victims' families, although the exact words or the identities of the speakers do not appear in the trial record—while the court read the preliminary instructions. The prosecutor suggested that the court admonish the spectators to be respectful; Mr. Byers' trial counsel agreed and the court did so after excusing the jury. At his post-conviction hearing, Mr. Byers testified that, at this point in the trial, Dodds' mother and sister said "you guilty mother fucker, I hope you fry. We shouldn't be having a trial anyway, you know you're guilty, you know you did it. Things of that nature." Mr. Byers testified that the jury heard Dodds' relatives but that he was paying attention to his lawyer at the time and not looking at the jury. Later, during Dodds' testimony, authorities removed Dodds' brother from the courtroom, possibly for outstanding warrants. Dodds' mother, Ms. Jeannie Dunlap, reacted by apparently shouting and making a scene and, after excusing the jury, the trial court addressed her and eventually jailed her overnight for contempt of court. Mr. Byers testified that he knew the jurors heard this incident because their heads turned. After these interruptions and at various points during the trial, after excusing the jury, the judge admonished the spectators to maintain proper courtroom decorum out of respect for the jury's difficult job. At his post-conviction

hearing, Mr. Byers described a third incident, although there is no record of it, when two girls taunted "you are going to get found guilty, you gonna get found guilty." Mr. Byers testified that he wasn't sure that the jury heard them. Defense counsel never objected, nor requested jury questioning nor moved for a mistrial based on the disruptions.

Mr. Byers had not testified at his trial. His lawyer argued that, on the day in question, Mr. Byers was with his very-pregnant girlfriend, where they were watching movies at Mr. Byers' father's house in Chicago. Mr. Byers' father and girlfriend corroborated this story. The jury convicted Mr. Byers on all counts, and he was sentenced to the maximum 200 years' imprisonment. As noted, the conviction and sentence were affirmed on direct appeal. See *Byers v. Ind.*, 709 N.E.2d 1024 (Ind. 1999).

Mr. Byers collaterally attacked his conviction based on ineffective assistance of counsel and other grounds. At all levels of state post-conviction review, he asserted an ineffective-assistance-of-counsel claim based on the failure of trial counsel to address the outbursts at trial (the outbursts ground). The post-conviction courts denied relief on this ground because he failed to show that some of the outbursts occurred or that any juror or prospective juror heard the spectators' statements, and, therefore, he failed to prove deficient performance.[2] 2007 WL 4531828, at *6. In federal habeas proceedings,

---

[2] Mr. Byers' trial and appellate counselors testified via affidavits that they had no recollection of the proceedings or their strategy independent of the record evidence.

the district court held that Mr. Byers' claim failed because the outbursts did not call into question Mr. Byers' guilt and because there was no evidence that the jury was prejudicially affected. 2009 WL 537662, at **3-4.

Unlike his outbursts ground, Mr. Byers was less consistent in his attempt to exhaust his claim based on trial counsel's failures to object to Mr. Byers' purported restraints at trial and to demand that the trial judge make findings before allowing Mr. Byers to appear before the jury in restraints (the restraints ground). At an evidentiary hearing before the state post-conviction trial court, Mr. Byers submitted a list, including the simple word "restraints," of issues his post-conviction counsel had inadequately addressed. Mr. Byers also testified that he was in restraints during trial, that his trial counsel didn't address his request to remove the restraints and that the judge made no findings that restraints were necessary. Mr. Byers claimed that the trial judge and jury knew he was restrained because he had to walk in front of them when he showed them his teeth. Mr. Byers, however, did not testify explicitly that the jury saw the restraints. The post-conviction trial court ordered Mr. Byers' post-conviction counsel to file a supplemental amended petition to address Mr. Byers' list. In complying, counsel argued that no further evidentiary hearing was warranted and argued that Mr. Byers' "restraints" issue had no merit:

> In this case defendant was required to wear ankle restraints throughout the trial and on at least one occasion, appeared before the jury in those re-

straints. Trial counsel could, and probably should have requested a mistrial based upon the ankle restraint observation by the jury. Which is deficient performance on the part of counsel. However, it would be difficult to show any resulting harm at the time it occurred and certainly near impossible at this point in time. Such a showing would necessitate contemporaneous voir dire of the jury for existence of any prejudice to the defendant's fair trial rights prior to establishing grounds for a mistrial request. Such an inquiry cannot be made at the present later date. . . . The general rule precludes presenting a defendant to the jury in handcuffs or shackles, but a court may need to do so in certain exceptional circumstances when restraint is necessary to prevent the escape of the prisoner, to protect those in the courtroom, or to maintain order.

Mr. Byers, not satisfied, moved the court to strike the supplemental amended petition and asked for time to find a new counsel. Mr. Byers failed to find substitute counsel and requested that his post-conviction counsel continue representation, which had the effect of abandoning his motion.[3] His post-conviction petition was

---

[3] Mr. Byers styled this filing "Motion to Proceed with Post-Conviction Relief Evidentiary Hearing," but did not request an evidentiary hearing in the body of the Motion. He concluded: "Wherefore the Petitioner prays that this Court will Grant this Motion to Proceed With the Post-Conviction Relief Evidentiary Hearing's portion of Findings of Fact and Con-

(continued...)

denied. *Byers v. Indiana*, No. 71DO4-9701-CF-0059 (St. Joseph County Ct. Feb. 6, 2007). Before the state post-conviction appellate court Mr. Byers, acting *pro se*, attacked post-conviction counsel's performance based on his restraints at trial (although he cited caselaw discussing federal law relating to trial counsel and restraints: *Roche v. Davis*, 291 F.3d 473, 483 (7th Cir. 2002); *Wrinkles v. Indiana*, 749 N.E.2d 1179, 1195 (Ind. 2001)). The appellate court denied his petition based on Mr. Byers' non-constitutional claim of ineffective assistance of post-conviction counsel without discussing his trial counsel's performance regarding his restraints. 2007 WL 4531828, at *5-8. After the Supreme Court of Indiana denied transfer, *Byers v. State*, 891 N.E.2d 41 (Ind. 2008), Mr. Byers filed a federal habeas petition. The district court found that Mr. Byers had procedurally defaulted (by failing to exhaust) his restraints ground because Mr. Byers proceeded with post-conviction counsel knowing that his counsel would argue against his restraints ground. See 2009 WL 537662, at *3.

## II. Discussion

### A. Mr. Byers did not exhaust his claim on the restraints ground.

We cannot review a habeas petitioner's constitutional issue unless he has provided the state courts with an

---

[3] (...continued)

clusions of Law; and any other pleading that this Court deems to be just and proper in the Premises."

opportunity to resolve it "by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see 28 U.S.C. § 2254(b)(1)(A). A petitioner must fairly present his federal claims to the state courts by arguing both the law and the facts underlying them. *Baldwin v. Reese*, 541 U.S. 27, 29, 32 (2004) (explaining that, to comply with the requirement that the claims assert violations of the federal constitution, the petitioner may simply label his claim "federal" or cite cases that decide the claim on federal grounds); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised." *Bell v. Cone*, 543 U.S. 447, 451 n. 3 (2005) (citing *Baldwin*). We use four factors to evaluate whether a petitioner has "fairly presented" his claim: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." See *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009).

When a petitioner has not properly asserted his federal claims at each level of review and it is clear that

the state courts would now hold those claims pro-
cedurally barred, federal courts may not address those
claims unless the petitioner demonstrates cause and
prejudice or a fundamental miscarriage of justice if the
claims are ignored. See *McGee v. Bartow*, 593 F.3d 556,
565 (7th Cir. 2010); *Woods v. Schwartz*, 589 F.3d 368, 373
(7th Cir. 2009). Mr. Byers argues that he exhausted the
factual basis for his restraints claim by arguing it in
(a) his attorney's post-conviction supplemental amended
petition, (b) his *pro se* Verified Motion to Strike and
(c) his *pro se* appellate brief.

### 1. Post-conviction proceedings.

Even though Mr. Byers presented his restraints ground
to the trial court through his supplemental amended
petition, he did not present it on appeal. Mr. Byers, ap-
pearing *pro se*, presented an ineffective-assistance-of-
post-conviction-counsel claim rather than an ineffective-
assistance-of-trial-counsel claim. At different levels of
post-conviction or habeas proceedings a "petitioner may
reformulate [his] claims so long as the substance of the
claim remains the same." *Sweeney v. Carter*, 361 F.3d 327,
333 (7th Cir. 2004) (finding exhaustion because all claims
focused on counsel's advice regarding a use-immunity
agreement even though he asserted varying amend-
ments as the basis for the claim); see also *United States
v. Fairman*, 707 F.2d 936, 940 (7th Cir. 1983). But, we have
held that an ineffective-assistance-of-post-conviction-
counsel claim does not exhaust an ineffective-assistance-of-
trial-counsel claim because the claims are more than a

variation in legal theory. See *Howard v. O'Sullivan*, 185 F.3d 721, 724-26 (7th Cir. 1999) (explaining that there is no constitutional guarantee of post-conviction trial counsel); see also *Spreitzer v. Schomig*, 219 F.3d 639, 645-47 (7th Cir. 2000) (holding that petitioner did not present his ineffective-assistance-of-sentencing-counsel claim to the Illinois Supreme Court when he raised an ineffective-assistance-of-post-conviction-counsel claim).

*Howard* and *Spreitzer*'s petitioners, however, were represented by counsel. See *Spreitzer*, 219 F.3d at 645; *Howard*, 185 F.2d at 725. Mr. Byers, as noted, appealed his post-conviction petition *pro se*, and a court should be willing to construe more liberally a *pro se* litigant's claims than those of a counseled litigant. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972). For example, we have excused the error of a *pro se* petitioner who simply mislabeled his claim. See *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (holding that a *pro se* post-conviction petition making a claim labeled ineffective assistance of trial counsel for failure to make a *Brady* claim could be interpreted as simply making a *Brady* claim, based on the actual language of the petition).

Applying these standards, we find that Mr. Byers did not exhaust his restraints claim. In his *pro se* state post-conviction appellate brief, Mr. Byers raised several claims: ineffective assistance of post-conviction counsel for failure to represent petitioner in a manner that comports with due process of law, and ineffective assistance of both trial and appellate counsel for failure to adequately address the outbursts at trial. Mr. Byers'

arguments about his restraints at trial are tightly couched in an argument about the ineffective assistance of post-conviction counsel. Even with the liberal trend marked by *Baldwin* and the generous construction we give to *pro se* petitioners' claims, Mr. Byers did not meet his burden of fair presentment on appeal given the variation in legal theories between his post-conviction proceedings and his state appeal, namely his presentment of his restraints claim only as representing ineffectiveness of post-conviction counsel.[4]

### 2. Cause and prejudice.

Alternatively, Mr. Byers claims he demonstrated cause and prejudice to excuse his default because his post-conviction counsel, acting as Mr. Byers' agent, failed to satisfy his duties to his principal by ignoring Mr. Byers' directives to raise the restraints claim. *Wainwright v. Sykes*, 433 U.S. 72 (1977). Mr. Byers cites *Clemmons v. Delo*, for this agency-law-based argument. See 124 F.3d 944, 947-49 (8th Cir. 1997) (finding petitioner exhausted his claims when he moved the state supreme court to allow him to raise them when his counsel refused to). But, as Mr. Byers acknowledges in explicitly declining to make this argument, ineffectiveness of post-conviction counsel does not supply "cause" in the cause-and-prejudice formula. See *Coleman v. Thompson*, 501 U.S. 722, 753

---

[4] There is no question that Mr. Byers subsequently addressed the claim in his appeal to the Supreme Court of Indiana.

(1991); *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002). Mr. Byers has not demonstrated "cause" sufficient to excuse his default.[5]

### 3. Evidentiary hearing.

Mr. Byers also requests an evidentiary hearing. A federal court is precluded from holding an evidentiary hearing on a habeas claim if the petitioner "failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(e)(2); see also *Williams v. Taylor*, 529 U.S. 420, 437 (2000); *Allen v. Buss*, 558 F.3d 657, 664 (7th Cir. 2009). In the present case, the post-conviction trial court asked the parties to request an additional evidentiary hearing if necessary after Mr. Byers' post-conviction counsel investigated Mr. Byers' claims, including the restraints ground. Mr. Byers then proceeded with counsel whose supplemental amended petition argued that there was no need for a further evidentiary hearing. Accordingly, under 28 U.S.C. § 2254(e)(2), we are precluded from providing Mr. Byers an evidentiary hearing on this claim.

### B. Mr. Byers did not establish a violation of his right to effective assistance of counsel.

Mr. Byers' ineffective-assistance-of-counsel claim related to the outbursts at trial fails on the merits. To

---

[5] Mr. Byers does not argue that a fundamental miscarriage of justice excuses his default.

prevail on an ineffective-assistance-of-trial-counsel claim, the petitioner must demonstrate that (a) his counsel's performance fell below an objective standard of reasonableness and (b) the counsel's errors so prejudiced his defense that it deprived him of a fair trial. *Strickland v. Wash.*, 466 U.S. 668, 687-88 (1984); *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009). To show prejudice, Mr. Byers must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Indiana Court of Appeals addressed Mr. Byers' outbursts ground on the merits, and we review that court's decision under the limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication of the petitioner's constitutional claims was based on unreasonable fact-finding or was contrary to, or involved an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state ruling runs afoul of these AEDPA standards is a legal determination we review de novo, but the district court's factual determinations are reviewed for clear error. See *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009).

Mr. Byers first argues that the state court wrongly rejected his claim that additional outbursts, absent from

the record, also occurred at trial. The trial record reveals two disturbances: spectator's comments as noted by the prosecutor before opening argument and Ms. Dunlap's commotion. Mr. Byers testified at his evidentiary hearing that during the first recorded disturbance and during a third, unrecorded disturbance, the victim's family or other gallery members made comments about his guilt. The state appellate court reasonably concluded that there was no factual basis for finding that the spectators' outbursts occurred in the manner Mr. Byers claimed they had. See 2007 WL 4531828, at *6; 28 U.S.C. § 2254(e); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010) ("Section 2254(e)(1)'s text makes . . . clear: 'a determination of a factual issue made by a State court shall be presumed to be correct.'").

Mr. Byers next contends that the Indiana Court of Appeals misapplied *Strickland* when it held that he did not prove the requisite prejudice at trial. "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). While it is well established that a defendant's due process rights include a right to an unbiased and impartial jury, it is equally clear that not every outburst or disruption warrants a new trial. See *United States v. Olano*, 507 U.S. 725, 738 (1993) (holding that, because "[i]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote," a new trial is only required where there is discernible prejudice); *Irwin v. Down*, 366 U.S. 717, 728 (1961).

We have no record evidence of what was said, and we cannot not find prejudice stemming from ambiguous or innocuous comments. In *Whitehead v. Cowan*, we found "innocuous" a victim's mother's outburst asking petitioner why he had killed her daughter—an outburst that occurred when the jury was seated but the judge had stepped out. See 263 F.3d 708, 724-25 (7th Cir. 2001); see also *United States v. Al-Shahin*, 474 F.3d 941, 949 (7th Cir. 2007). In our case, of course, the disturbances occurred when the trial judge was able to monitor and address them immediately—which he did by excusing the jury and admonishing the spectators to maintain proper etiquette. At the end of trial, the judge questioned the jury, and not one juror indicated that the disturbances or any other event affected his or her ability to render a fair verdict. See *Whitehead*, 263 F.3d at 726.

Lastly, Mr. Byers attempts to prove prejudice with a juror's affidavit in which she testifies that Ms. Dunlap's scene frightened her. The government contends that Mr. Byers has not made the requisite showing, under § 2254(e)(2), to allow us to consider the affidavit because it was first presented to the district court. *Williams*, 529 U.S. at 432. The district court, without deciding whether Mr. Byers satisfied § 2254(e)(2), concluded that the affidavit did not provide evidence that the juror was incapable of making a fair or impartial decision. We agree: the affidavit is irrelevant. We will not presume that the juror was unable to follow instructions just because she was frightened by Ms. Dunlap's commotion at trial, and certainly not that Mr. Byers' trial would have ended with a not-guilty verdict. Mr. Byers did not

meet his burden of proving that, but for the outbursts or disturbances, the result of his trial would have been different.[6]

The judgment of the district court is AFFIRMED.

---

[6] In addition, even if Mr. Byers had not procedurally defaulted his restraints ground, he cannot prove prejudice, even under the de novo review required because the state courts did not reach this issue. See *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). As Mr. Byers notes, a defendant may advance a Fifth Amendment due process claim based on evidence that he was wearing visible restraints at trial, *Deck v. Missouri*, 544 U.S. 622, 629, 635 (2005), but to claim a violation of his Sixth Amendment right to counsel, he must also prove prejudice. See *Strickland*, 466 U.S. at 692-93. Cf. *Marquard v. Sec'y for the Dep't of Corr.*, 429 F.3d 1278, 1313 (11th Cir. 2005) (explaining that *Deck* did not affect the *Strickland* analysis). Mr. Byers argues that his case turned on the credibility of Dodds, and, therefore, any erosion of the presumption of innocence prejudiced him. But Dodds' credibility was well-established: she led police to Mr. Byers through her personal knowledge of him, of his nickname and of his girlfriend, and she positively identified Mr. Byers in a photographic array. Cf. *Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Mr. Byers hasn't shown prejudice because the trial evidence against him is sufficiently robust. As a result, we would also reject Mr. Byers' restraints ground on the merits.