In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2435

SHANE MCCARTHY,

*Petitioner-Appellant,*

*v.*

WILLIAM POLLARD,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:10-cv-00429-WCG—**William C. Griesbach,** *Judge.*

ARGUED JUNE 2, 2011—DECIDED AUGUST 24, 2011

Before BAUER, POSNER and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Shane McCarthy was convicted in the Milwaukee County Circuit Court of causing great bodily harm by operating a motor vehicle while under the influence of cocaine, in violation of Wis. Stat. § 940.25(1)(am). After unsuccessfully seeking post-conviction relief in Wisconsin state courts, McCarthy filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. The district court denied relief. We affirm.

## I. BACKGROUND

On December 3, 2004, McCarthy was driving through Milwaukee in a car owned by his girlfriend, Jessica Poetsch. He stopped to solicit an undercover Milwaukee police officer, offering her drugs in exchange for oral sex. Upon the undercover officer's signal, additional officers surrounded him and ordered him to get out of his car. McCarthy refused and drove away at a high rate of speed. Soon thereafter, McCarthy ran through a stop sign and crashed into a police call box. Officers again ordered McCarthy out of the car, but he again refused. While driving in reverse, he continued his flight until he collided with two other vehicles, seriously damaging the vehicles and injuring seven people. Police finally apprehended McCarthy as he ran toward an alley.

McCarthy was transported to a nearby hospital, where physicians treated his injuries and placed him in a medically induced coma that lasted from December 4, 2004 to December 29, 2004. Tests conducted at the time of his hospital admission revealed that McCarthy had three different cocaine metabolites in his system.

While McCarthy remained in a coma, the police asked the prosecutor whether the vehicle should be retained for evidence. The prosecutor replied that it should not. Pursuant to its protocol, the City then notified Poetsch of her right to reclaim her car. Although she attempted to reclaim it on December 6, 2004, the City would not release it to her because she did not have proof of title. Because Potesch failed to return with proof of title within fifteen days of the accident, the City destroyed the vehicle on December 22, 2004.

McCarthy emerged from his coma on December 29, 2004. Prosecutors filed a criminal complaint against him five days later. Although McCarthy swiftly filed a comprehensive discovery request demanding access to all physical evidence related to the case, the vehicle he was driving on the night of the accident had already been destroyed.

## II. DISCUSSION

A defendant who is charged under Wis. Stat. § 940.25(1)(am)—for causing great bodily harm by operating a vehicle under the influence of an intoxicant or controlled substance—can avoid a conviction by proving by a preponderance of the evidence that the victims would have suffered great bodily harm even if the defendant had been exercising due care and had not been under the influence of an intoxicant or controlled substance. Wis. Stat. § 940.25(2)(a). McCarthy attempted to avail himself of this affirmative defense at trial. He argued that (1) he fled from the police because he thought they were attempting to rob him; (2) he drove toward the police call box in order to inform the police about this supposed robbery; and (3) he crashed into the call box because his brakes failed. Given the brake failure, McCarthy argued, the victims would have suffered great bodily harm even if he had not been under the influence of cocaine. Because the jury convicted McCarthy under Wis. Stat. § 940.25(1)(am), we can assume that it rejected this argument.

### A.  Procedural History

Prior to trial, McCarthy moved to dismiss the charges against him, arguing that the prosecution deliberately destroyed the vehicle while he was in a coma in order to prevent him from offering proof of the brake failure at trial, in violation of his constitutional right to due process under the Fourteenth Amendment. The trial judge denied his motion, holding that there could be no due process violation because (1) the State did not possess or control the car, had no duty to preserve the car or take possession of it, and had no obligation to assume that the car constituted exculpatory evidence; and (2) the City possessed and controlled the car, followed normal procedures in notifying the owner of its whereabouts, and had no reason to believe that the car possessed evidentiary value. *State v. McCarthy*, No. 2005CF000021, Motion Hearing (Oct. 28, 2005).

Having failed to obtain a dismissal of the charges, McCarthy proceeded to trial. The jury convicted him of three counts of causing great bodily harm by operation of a motor vehicle while under the influence of cocaine.

McCarthy timely filed for postconviction relief in the Milwaukee County Circuit Court, repeating the same due process argument detailed above. The circuit court denied this motion, stating in relevant part,

> To the extent that the defendant again raises [the due process argument he made in a pretrial motion], his motion is denied for the same reasons set forth by [the trial judge]. There was, and is, no showing

under the applicable caselaw that the State was aware of potentially exculpatory evidence and/or acted with bad faith to suppress it. *State v. Greenwold*, 189 Wis. 2d 59, 68 (Ct. App. 1994). In addition, there was, and is, no showing that the vehicle possessed an exculpatory value that was apparent before it was destroyed and that it was of such a nature that the defendant would not be able to obtain comparable evidence by any other reasonable means. *State v. Oinas*, 125 Wis. 2d 487, 490 (Ct. App. 1985).

*State v. McCarthy*, No. 05CF000021, Decision and Order Denying Motion for Postconviction Relief, at 5 (Dec. 18, 2007).

The Wisconsin Court of Appeals affirmed, holding that even if the vehicle was "potentially exculpatory" evidence, there was "no basis" to conclude that the vehicle was destroyed in bad faith. *State v. McCarthy*, 2009 WL 2959634, *1 (Wis. Ct. App. Sept. 17, 2009). The Wisconsin Supreme Court denied McCarthy's petition for review. *State v. McCarthy*, No. 2008AP398-CR (Feb. 23, 2010).

Having exhausted his state court remedies, McCarthy filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Wisconsin. The district court denied relief pursuant to Rule 4 of the Rules Governing § 2254 Cases, holding that "although the state courts recognized that the car could potentially be exculpatory, there was no indication that it was destroyed in bad faith," and that "[t]hese conclusions were not an unreasonable application of clearly established federal law." *McCarthy*

*v. Thurmer*, 2010 WL 2102428, at *1 (E.D. Wis. May 21, 2010).

### B.  Standard of Review

Federal courts may only grant habeas relief to petitioners who demonstrate that they are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245(a). In this case, our habeas review is restricted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs federal habeas review of state court criminal convictions. *Id.*; *Conner v. McBride*, 375 F.3d 643, 648-49 (7th Cir. 2004).

Under the AEDPA, a petitioner for habeas relief must establish that the state court proceedings resulted in a decision that (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A federal court may issue a writ of habeas corpus under the "contrary to" clause "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*,

535 U.S. 685, 694 (2002).[1] Alternatively, a federal court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* The focus of the reasonableness inquiry is on whether the state court's application of clearly established federal law is *objectively unreasonable*, not whether it applied clearly established federal law correctly. *Id.* Accordingly, when making this inquiry, a habeas court must first determine what arguments or theories could have supported the state court's decision and then ask if fairminded jurists could disagree about whether those arguments or theories are inconsistent with Supreme Court holdings. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011).

The relevant decision for purposes of our analysis under the AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim—in this case, the decision of the Wisconsin Court of Appeals denying postconviction relief. *See Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). Whether the Wisconsin Court of Appeals' decision ran afoul of AEDPA standards is a legal determination that we review de novo. *See Byers v. Basinger*, 610 F.3d 980, 987 (7th Cir. 2010); *Conner*, 375 F.3d at 650. However, we review the district court's factual determinations for clear error, and we presume

---

[1] McCarthy does not challenge the state court's decision as being "contrary to" clearly established federal law.

that the state court's factual determinations are correct unless the petitioner can demonstrate by clear and convincing evidence that they were unreasonable. *Byers*, 610 F.3d at 988; *Conner*, 375 F.3d at 649.

### C.  Due Process Analysis

Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. *California v. Trombetta*, 467 U.S. 479, 485 (1984). This standard of fairness requires that defendants be afforded a meaningful opportunity to present a complete defense. *Id.* To safeguard this right, the Supreme Court developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *Id.* Taken together, "this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *Id.*

#### 1.  Rules Governing the Duty to Preserve Evidence Under the Due Process Clause

The Supreme Court's decisions in *Trombetta* and *Youngblood* govern a state's duty under the Due Process Clause of the Fourteenth Amendment to preserve evidence on behalf of a defendant. *Trombetta*, 467 U.S. at 480, 488-89; *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Over the years, courts have fashioned different interpretations of the collective meaning of *Trombetta* and

*Youngblood*. A brief summary of these two cases is thus in order.

In *Trombetta*, the Supreme Court addressed the issue of whether a state was required to preserve breath samples used in conjunction with an Intoxilyzer test. The Court held that the State had no such duty because (1) the officers were acting in "good faith and in accord with their normal practice"; (2) the evidence did not "possess an exculpatory value that was apparent before the evidence was destroyed"; and (3) the evidence was not "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89.

Subsequently, in *Youngblood*, the Supreme Court addressed whether a state was required to preserve semen samples that might have been useful to a criminal defendant. The Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." *Youngblood*, 488 U.S. at 58. The rationale behind this bad faith requirement is found in *Trombetta*, which stated, "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Youngblood*, 488 U.S. at 69 n.6 (quoting *Trombetta*, 467 U.S. at 486).[2]

---

[2] The Court in *Youngblood* was careful to distinguish *Brady*, stating,

(continued...)

Our interpretation of *Trombetta* and *Youngblood* differs from that of Wisconsin courts. According to Wisconsin courts, these cases stand for the proposition that a defendant's due process rights are violated if the police (1) failed to preserve "apparently" exculpatory evidence, leaving the defendant with no ability to obtain comparable evidence by any other reasonable means (with this portion of rule deriving from *Trombetta*); or (2) failed to preserve "potentially" exculpatory evidence in bad faith (with this portion of the rule deriving from *Youngblood*). *See, e.g., State v. Greenwold*, 525 N.W.2d 294, 296-98 (Wis. Ct. App. 1994). However, according to our precedent, *Trombetta* and *Youngblood* do not create two separate rules, with the former governing "apparently" exculpatory evidence and the latter governing "potentially" exculpatory evidence. We instead read both cases to stand for the same proposition: the destruction of potentially exculpatory evidence violates the defendant's right to due process if (1) the State acted in

---

(...continued)

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

*Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other reasonably available means.[3] *See, e.g., Henry v. Page*, 223 F.3d 447, 481 (7th Cir. 2000) (explaining that *Youngblood* used the word "potentially" to illustrate that the defendant failed the second prong—which requires the evidence's exculpatory value to be apparent—of *Trombetta*'s test).

### 2. *Application of* Trombetta *and* Youngblood *to this Case*

McCarthy argues that the "unreasonable application" prong of the AEDPA requires us to accept as correct Wisconsin's interpretation of *Trombetta* and *Youngblood*, leaving us with no authority to question Wisconsin's rule under any standard of review. While we are dubious

---

[3] McCarthy assumed that, like Wisconsin courts, the Seventh Circuit distinguishes between "apparent" and "exculpatory" evidence, and that our inclusion of the word "apparent" in our three-part test is thus "mysterious." McCarthy, however, has misinterpreted our precedent. *Compare United States v. Folami*, 236 F.3d 860, 864 (7th Cir. 2001) (stating that our three-part test derives from *Trombetta*), *with Hubanks v. Franks*, 392 F.3d 926, 931 (7th Cir. 2004) (stating that our three-part test also derives from *Youngblood*). *See also United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009) (observing that our three-part test derives from both *Trombetta* and *Youngblood*).

of this position,[4] we need not explore this issue be-
cause—regardless of which rule applies—the Wisconsin
Court of Appeals reasonably concluded that the vehicle

_____

[4] In *Williams v. Taylor*, the Supreme Court stated, "a state-court
decision involves an unreasonable application of this Court's
precedent *if the state court identifies the correct governing legal rule
from this Court's cases* but unreasonably applies it to the facts
of the particular state prisoner's case." *Williams v. Taylor*, 529
U.S. 362, 407 (2000) (emphasis added). In accordance with
this rule, we have previously stated,

> [Section 2254(d)] does not tell us to "defer" to state deci-
> sions, as if the Constitution means one thing in Wisconsin
> and another in Indiana. . . .
>
> . . . Section 2254(d) requires us to give state courts'
> opinions a respectful reading, and to listen carefully to their
> conclusions, but when the state court addresses a legal
> question, it is the law "as determined by the Supreme
> Court of the United States" that prevails. . . .
>
> . . . .
>
> . . . The novelty [of § 2254(d)(1)] is not the "contrary to"
> part but the reference to "Federal law, *as determined by the
> Supreme Court of the United States*" (emphasis added). This
> extends the principle of *Teague* by limiting the source of
> doctrine on which a federal court may rely in addressing
> the application for a writ. It does not, however, pur-
> port to limit the federal courts' independent interpretive
> authority with respect to federal questions.

*Lindh v. Murphy*, 96 F.3d 856, 868-69 (7th Cir. 1996) (although this
decision was reversed in part on other grounds, *Lindh v. Murphy*,
521 U.S. 320 (1997), the portion quoted above was cited by
the Supreme Court with approval in *Williams v. Taylor*, 529
U.S. at 387).

had no apparent exculpatory value and that the State destroyed it in good faith.

To be considered "apparently" exculpatory, the exculpatory nature of the evidence must be apparent *before* it is destroyed. *Youngblood*, 488 U.S. at 57 n.*. Accordingly, "[t]he possibility that [the evidence] *could* have exculpated [the petitioner] *if* preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta*." *Youngblood*, 488 U.S. at 57 n.*. In light of this rule, McCarthy argues that the existence of a statutory affirmative defense to his crime, coupled with his purported shift from "skillful" to erratic driving, rendered the exculpatory nature of the vehicle "apparent," and that the Wisconsin Court of Appeals' conclusion to the contrary is unreasonable. We disagree.

After being ordered out of his car, McCarthy drove away at a high rate of speed, eventually crashing into a police call box and driving in reverse into an intersection. Even if, as McCarthy contends, he ran into the police call box because his brakes failed, the brake failure would not have been apparent to the police before the vehicle was destroyed because (1) there was no evidence of brake failure near the police call box or anywhere else, such as brake fluid in the street; (2) total brake failure is uncommon—a proposition defense counsel conceded at oral argument; (3) after the police loudly announced their presence and ordered McCarthy to get out of his car, they had every reason to think that McCarthy's flight was motivated by a desire to evade arrest for solicitation of a prostitute, and that his subsequent crash into the call box was caused not

by brake failure but by reckless driving; and (4) if McCarthy's brakes had in fact failed prior to crashing into the call box, it seems unlikely (i.e., not apparent) that he would continue his flight while knowing that his brakes were faulty. Thus, quite contrary to being apparent, "no more can be said [about the vehicle] than that it could have been subjected to tests, the results of which might have exonerated the defendant*." See Youngblood*, 488 U.S. at 57 n.*. We therefore cannot say that the Wisconsin Court of Appeals unreasonably concluded that the vehicle used in the offense did not possess an exculpatory value that was apparent before it was destroyed.

In addition to being unable to prove the apparently exculpatory nature of the vehicle, McCarthy cannot prove that the State destroyed the vehicle in bad faith. A finding of bad faith in these circumstances turns on "the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 57 n.*. Instead of presenting evidence of the government's knowledge, however, he argues only that the State acted in bad faith because (1) the crime was "vehicle-related"; (2) the prosecutor did not adequately explain his decision to release the vehicle while McCarthy lay in a coma; (3) the prosecution stated in closing argument that there was no evidence of brake failure; and (4) Wisconsin courts improperly focused on the State's adherence to protocol when determining that the State did not act in bad faith. Taking each assertion as true, we cannot find that these four concerns amount to a showing of bad faith and that the Wisconsin Court of Appeals acted unreasonably in concluding otherwise.

First, this was not a "vehicle-related" crime in the sense that McCarthy uses this term. The underlying crime at issue was solicitation of a prostitute. McCarthy's decision to flee from the scene of the crime, causing great bodily harm to others and prompting the prosecution to charge him under Wis. Stat. § 940.25(1)(am), does not change the nature of his offense. Moreover, the proper inquiry here focuses on whether the evidence—not the crime—was of such a nature that the State had a duty to preserve it. Second, the State has no duty to preserve all evidence, whether apparently or potentially exculpatory, while a defendant is in a coma or otherwise unavailable. Once again, the relevant question focuses on the nature of the evidence and (if applicable) the State's decision to destroy it in bad faith; it does not focus on the availability of the defendant. Third, when a defendant presents an affirmative defense at trial, the prosecution is allowed to comment upon it, pointing out any relevant weaknesses during closing arguments. This remains true even when, as here, the defendant wishes he could have presented more evidence to support his affirmative defense. Fourth, it is not the obligation of the court to address evidence that has not been presented to it. If McCarthy desired a lengthier bad faith analysis from the Wisconsin courts, he should have presented more substantial evidence as to why the State acted in bad faith.[5]

---

[5] Having been unable to prove that the exculpatory evidence was apparent and that the State acted in bad faith, McCarthy

(continued...)

Therefore, keeping in mind AEDPA standards and the Supreme Court's decisions in *Trombetta* and *Youngblood*, we hold that the Wisconsin Court of Appeals reasonably concluded that the State did not violate McCarthy's right to due process when it destroyed the vehicle, which possessed no apparent exculpatory value, in good faith.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the denial of McCarthy's petition for writ of habeas corpus.

---

(...continued)

has failed two out of three prongs in our three-part test, s*ee Kimoto*, 588 F.3d at 475, and the test used by Wisconsin state courts, s*ee State v. Greenwold*, 525 N.W.2d 294, 296-98 (Wis. Ct. App. 1994).

---