NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 2, 2012
Decided November 15, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-1378

| | |
|---|---|
| MOHAMED JASEEN MOHAMED MOHIDEEN, aka JAHUFAR SADIQUE SYED IBRAHIM MEERA MOHIDEEN, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| | No. A089 127 371 |
| *v.* | |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent*. | |

**ORDER**

Mohamed Mohideen, a Sri Lankan citizen who fears that the national military will punish him for appearing to aid a rebel group, petitions for review of the Board of Immigration Appeals' denial of his motion to reconsider the agency's denial of his request for asylum. Mohideen argues that the Board (1) did not properly evaluate the immigration

judge's adverse-credibility finding and (2) did not give sufficient weight to his affidavit in which he offers new evidence of the danger facing him back in Sri Lanka.

Between 1983 and 2009, the Liberation Tigers of Tamil Eelam, a Tamil group seeking a separate state in the northern and eastern regions of Sri Lanka, fought against the Sinhalese-majority government. The civil war claimed between 7,000 and 40,000 lives and displaced nearly 300,000 people in its final two years alone. Caught in the middle as a neutral Muslim (Muslims are about 10 percent of the Sri Lankan population), Mohideen left the country and entered the United States in 2006. Within a year of entry, he applied for asylum and withholding of removal based on persecution on account of his race and political opinions; he also sought relief under the United Nations Convention Against Torture.

At a hearing before an immigration judge, Mohideen testified that the Tamil Tigers occupied his hometown in northern Sri Lanka and the Sri Lankan army commandeered his fishing boat (which had a motor and could seat four) to use in an attack against the Tigers, but then lost the boat. Mohideen testified that he had a friend report the loss of the boat to the police, and he submitted a copy of the internal police record at the hearing. Fearing that the Tigers would recognize the boat as his and assume that he was assisting the military, he moved to a neighboring village, where he later learned that the Tigers had secured the boat and used it in a suicide attack against the Sri Lankan navy. Now afraid that the navy would think he supported the Tigers, Mohideen tried to explain the situation to naval officers, but they beat and detained him for six days. As a Muslim, he presumably was distrusted by both the Singhalese in the military and the Tamil rebels, each of whom may have imputed to him the political opinions of their adversaries. When released after the six days, he fled to India, where he lived for more than a year before traveling to the U.S.

The immigration judge denied Mohideen's application for asylum, withholding, and CAT relief because he did not find Mohideen credible. He noted the inconsistency between Mohideen's testimony—that the loss of his boat had been reported to the police by a friend—and the police record, which did not mention any friend and suggested that Mohideen had made the complaint himself. The immigration judge also found it implausible that Mohideen's boat could have been used by the army in an attack against the Tigers, lost by the army, recovered by the Tigers, and then used by the Tigers in an attack against the navy. Concluding that Mohideen had not presented sufficient evidence to establish eligibility for asylum, the immigration judge concluded that, *a fortiori*, Mohideen had not met the higher burdens of proof for a withholding of removal or CAT protection. The Board affirmed.

Mohideen moved the Board to reconsider, arguing that the immigration judge had misquoted his testimony and thereby made it appear that he had reported the loss of his boat while being detained by the navy. He also tried to present new evidence of the danger he faced back home by attaching an affidavit that his wife—still in Sri Lanka—had told him that two "area officers" had come to her refugee camp and "asked about" him. The Board denied the motion, pointing out that the immigration judge had based his credibility determination on factors other than the timing of the police report in relation to Mohideen's detention, and that the new affidavit was insufficient to warrant reopening his case, as it was not corroborated, and its truthfulness was further undermined by the immigration judge's adverse finding concerning his credibility.

Mohideen challenges the underlying removal order, but his petition to review the Board's decision affirming the immigration judge's removal order was untimely (by three months), and we therefore lack jurisdiction to review that order. 8 U.S.C. § 1252(b)(1).

Mohideen also challenges the Board's denial of the part of his motion that it construed as a motion to reopen—a ruling that we review for an abuse of discretion. *Victor v. Holder*, 616 F.3d 705, 708–09 (7th Cir. 2010). He contends that because motions to reopen are decided without a hearing, the Board should have credited his affidavit. But a full hearing had already been held on the merits of his asylum claim, and so the Board was entitled to reject Mohideen's affidavit for the reasons the Board indicated. *Liang v. Holder*, 626 F.3d 983, 990 (7th Cir. 2010); *Huang v. Mukasey*, 534 F.3d 618, 622 (7th Cir. 2008).

The petition for review is therefore denied.