In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3155

SAMUEL MORGAN,

*Petitioner-Appellant,*

*v.*

MARCUS HARDY, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3378—**David H. Coar,** *Judge.*

ARGUED SEPTEMBER 8, 2011—DECIDED NOVEMBER 7, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

BAUER, *Circuit Judge*. Samuel Morgan was convicted
in the Circuit Court of Cook County for the murders of
William Motley and Kenneth Merkson and the rape and
aggravated kidnapping of Phyllis Gregson. After unsuc-
cessfully seeking postconviction relief in the state courts,
Morgan filed a petition for a writ of habeas corpus in
the United States District Court for the Northern District

of Illinois. The district court denied relief but granted a certificate of appealability. We affirm.

## I.  BACKGROUND

On the afternoon of January 27, 1982, Samuel Morgan ("Morgan") arrived at the apartment of a friend, Elijah Prater ("Prater"), accompanied by William Motley ("Motley") and Kenneth Merkson ("Merkson"). There, the four men used cocaine, marijuana, and alcohol. Later that night Phyllis Gregson ("Gregson"), a friend of Prater's, joined them.

The group spent the night at Prater's apartment. The next day, just before noon, Motley, Gregson, and Morgan were in the apartment's front room. Motley was sitting on a couch, talking on the telephone and looking through a small, black telephone book. While he was making calls, Motley had a .357 magnum revolver tucked under his leg. Morgan was sitting on a chair with a shotgun across his lap, and Gregson was sitting in a rocking chair. Prater and Merkson were both in the kitchen.

Morgan then instructed Gregson to remove her clothing and dance for him. Gregson refused. Motley, still sitting on the loveseat, made an unknown comment to Morgan. Morgan, who was between six and seven feet away from Motley, aimed the shotgun at him and fired. Motley flew off the couch and onto the floor. Morgan then grabbed the revolver from Motley's body and placed it in his waistband.

Morgan went into the kitchen and instructed Prater and Merkson to come into the front room and clean up Motley's body. In the process, Merkson handed over money, marijuana, and the black telephone book to Morgan, who put the book in his pocket. At Morgan's request, Prater and Merkson unsuccessfully tried to fit Motley's body into a dresser drawer. Prater and Merkson then stuffed Motley's body into a laundry bag and wrapped it inside a mattress. Morgan told Gregson to clean Motley's blood from the floor, and she did.

Shortly thereafter, Morgan sent Prater to buy alcohol and fill Prater's car with gasoline. Prater ran the errands and returned to the apartment about fifteen minutes later. At that time, Gregson was washing dishes in the kitchen, and Morgan was sitting in the dining room with the shotgun in his lap and the handgun in the waistband of his pants. Merkson was walking around the apartment making jokes.

The men drank some of the liquor Prater purchased. Merkson continued making jokes until Morgan told him to stop joking and remove Motley's body from the apartment. When Merkson made another remark, Morgan chased him into the front room and hit him in the head with the butt of the handgun. And again, Morgan instructed Merkson to remove the body from the apartment.

Merkson made another remark to Morgan, and Morgan told Merkson to get down on his knees and face the floor. Prater testified that he saw Morgan point the handgun at Merkson's head from a distance of four to five feet. Prater then turned to face the wall, heard a shot,

and turned back to find Merkson's body on the floor. Both Gregson and Prater testified that they saw Morgan holding the handgun while standing beside Merkson's body.

Morgan ordered Gregson to clean up Merkson's blood, and instructed Prater to get the body out of the apartment. As Prater began tying up Merkson's body, Morgan approached him from behind and began shooting at him. Prater felt a bullet pass by his head, and he ran out the back door of the apartment.

Still armed with the handgun, Morgan took Gregson out of the apartment by her arm. While this was happening, Prater's downstairs neighbor called the police in response to the shots he heard.

The police arrived and discovered the bodies of Motley and Merkson, a loaded shotgun, a fingerprint on the dresser later identified as Morgan's, a bullet from the floor, and a bullet from the downstairs neighbor's apartment.

After leaving the apartment, Morgan took Gregson to the South Shore Motel, where he checked in under an alias and raped her. After spending about two hours in the motel room, Morgan escorted Gregson by the arm to his car. A motel employee testified that he saw Morgan pointing a gun to Gregson's head. When he noticed the employee, Morgan aimed the gun at him and chased him, but stopped when the employee ran into the motel lobby. Again, Morgan took Gregson by the arm and pushed her head first into the car. After driving away from the motel, Morgan stopped the car, told Gregson

to get out, and warned her not to tell anyone what had happened. Morgan then drove off at a high rate of speed.

Morgan was arrested the next day. Later that same day, Prater contacted the police and told them that Morgan was responsible for the deaths of Merkson and Motley. Prater's statements to the police were later confirmed by Gregson.

### A. Procedural History

At trial, an expert testified that the handgun recovered from Morgan had fired the bullets police found at the crime. The plastic bag that Morgan dropped contained a black notebook, which Prater and Gregson identified as one Merkson removed from Motley's body.

On May 3, 1983, a jury convicted Morgan of the murder of Merkson and Motley and the rape and aggravated kidnaping of Gregson. The Illinois Supreme Court affirmed on April 18, 1986. *People v. Morgan I*, 492 N.E.2d 1303, 1306 (1986); a petition for writ of certiorari to the United States Supreme Court was denied on February 23, 1987. *Morgan v. Illinois*, 479 U.S. 1101 (1987).

On January 20, 1988, Morgan filed a petition for postconviction relief under 725 ILCS 5/122-1, which was denied. The Illinois Supreme Court affirmed Morgan's convictions but vacated his death sentence and remanded the case for a new sentencing hearing, finding that Morgan had been denied effective assistance of counsel at his sentencing. *People v. Morgan II*, 719 N.E.2d 681, 687 (1999). On March 20, 2000, the United States Supreme

Court denied Morgan's petition for a writ of certiorari. *Morgan v. Illinois*, 529 U.S. 1023 (2000).

Morgan then filed a successor petition for postconviction relief and a petition for relief from judgment; after an evidentiary hearing, the court rejected all of Morgan's claims. The Illinois Supreme Court affirmed his convictions on September 23, 2004 and ordered that the stay of his new sentence be lifted. *People v. Morgan*, 817 N.E.2d 524, 526 (2004). Another petition for a writ of certiorari was denied on February 22, 2005. *Morgan v. Illinois*, 543 U.S. 1167 (2005).

On September 19, 2005, the state court sentenced Morgan to natural life imprisonment. The Illinois appellate court rejected Morgan's appeal on August 20, 2007. *People v. Morgan*, 875 N.E.2d 6, 10 (1st. Dist. 2007).

On June 11, 2008, Morgan filed for habeas corpus relief in the United States District Court, which was denied and is the subject of this appeal.

### B.  Prater's Recantation

Approximately 18 years after the murders took place and after repeatedly giving his account of the events leading to the deaths of Motley and Merkson under oath, Prater changed his story. Under Prater's new version of the crime, which he presented at the evidentiary hearing on Morgan's successive postconviction petition, Motley and Merkson got into an argument while they were at his apartment. Motley struck Merkson in the head with the handgun and then used the handgun to shoot

Merkson in the head. Motley then turned to Prater and Morgan, pointing the handgun at them. Morgan then shot and killed Motley in self-defense. Prater now claims that he attempted to tell the same version of the story to the police, but was coerced into changing his story to implicate Morgan.

## II. DISCUSSION

On appeal, Morgan argues that the district court erred by finding that the Illinois Supreme Court engaged in reasonable determinations of fact in (1) rejecting Prater's recantation testimony as incredible; (2) denying Morgan's *Brady* claim regarding a failure to disclose exculpatory evidence; (3) rejecting Morgan's *Giglio* claim; and (4) denying Morgan's ineffective assistance of counsel claim. Morgan also argues that the district court erred when it found that the Illinois Supreme Court did not violate 28 U.S.C. § 2254(d)(1) and reasonably applied *Brady* and *Strickland*. Finally, Morgan contends the district court erred in failing to conduct an evidentiary hearing. We review each issue in turn.

### A. Standard of Review

We review the district court's denial of habeas relief *de novo*. *Northern v. Boatwright*, 594 F.3d 555, 559 (7th Cir. 2010). The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets the parameters for our review. Under AEDPA, we may grant habeas relief only if a state-court decision was (1) "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in the light of the evidence presented." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

Under the "contrary to" clause, a federal court may issue a writ of habeas corpus if the state court applied a rule that "contradicts the governing law" set forth by the Supreme Court or if the state court reached a different outcome based on facts "materially indistinguishable" from those previously before the Supreme Court. *Williams*, 529 U.S. at 405-06; *see also Calloway v. Montgomery*, 512 F.3d 940, 943 (7th Cir. 2008). Under the "unreasonable application" clause, a petitioner must show that the state court's decision unreasonably extended a rule to a context where it should not have applied or unreasonably refused to extend a rule to a context where it should have applied. *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008) (citing *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001)); *see also Wright v. Van Patten*, ___ U.S. ___, 128 S.Ct. 743, 746-47 (2008) (emphasizing that a state court's application of clearly established law is acceptable, even if it is likely incorrect, so long as it is reasonable). Our review of reasonableness is highly deferential; indeed, "a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). On the other hand, a state court's decision is "objectively unreasonable," if it falls "well outside the boundaries of permissible differences

of opinion." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

The relevant decision for purposes of our assessment under AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim—in this case, the decisions of the Illinois Supreme Court denying postconviction relief: *Morgan II,* 719 N.E.2d at 687 and *Morgan III,* 817 N.E.2d at 524. We presume state factual findings to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); *Wiggins v. Smith,* 539 U.S. 510, 528 (2003); *Barrow,* 398 F.3d at 603. The presumption of correctness also applies to factual findings made by a state court of review based on the trial record. *Sumner v. Mata,* 449 U.S. 539, 546-47 (1981); *Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir. 1995); *see Matthews v. Ishee,* 486 F.3d 883, 889 (6th Cir. 2007).

### B. Morgan's Claim that Prater's Recantation is Credible

Morgan argues that the Illinois Supreme Court's rejection of Prater's recantation as incredible was based on an unreasonable determination of facts in violation of 28 U.S.C. § 2254(d)(2). We disagree.

To support his claim under § 2254(d)(2), Morgan asserts that there are several inconsistences between the record and the Illinois Supreme Court's factual determinations. Specifically, Morgan argues that (1) Prater's

recantation, unlike his trial testimony, is more consistent with a number of pieces of physical evidence; (2) Prater's claim that he was coerced by the police and the prosecutor sufficiently explains why Prater falsely implicated Morgan at trial; (3) Prater's new version of events in his recantation provides a more plausible explanation of Prater's "illogical behavior" that night; and finally (4) Motley's and Merkson's history of violence supports Prater's recantation that Morgan killed Motley in self-defense.

A petitioner's challenge to a state court decision based on a factual determination under § 2254(d)(2) will not succeed unless the state court committed an "unreasonable error," and § 2254(e)(1) provides the mechanism for proving unreasonableness. *See Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003). If a petitioner shows that the state court determined an underlying factual issue against the clear and convincing weight of the evidence, the petitioner has "gone a long way towards proving that it committed unreasonable error." *Ward*, 334 F.3d at 704. "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Id*. (quoting *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997)).

After careful review of the record, we find that the Illinois Supreme Court's determination that Prater's recantation was incredible was not against the clear and convincing weight of the evidence.

First Morgan's argument that Prater's recantation is more consistent with the physical evidence than his original trial testimony: while Prater's recantation does square with the physical evidence presented at trial, the Illinois Supreme Court, in rejecting Morgan's arguments, concluded that the original trial testimony—both Prater's and Gregson's—was not inconsistent with the physical evidence. For instance, Morgan contends that the photograph of Motley's body on the floor of the doorway is inconsistent with testimony indicating that Motley was shot while sitting on the loveseat. But the Illinois Supreme Court pointed out that both Prater's and Gregson's original testimony indicated that the body was moved from its location near the loveseat during the cleanup attempt.

Morgan next argues that the absence of blood found on or around the loveseat is an anomaly. The Illinois Supreme Court, however, concluded that the absence of blood on the loveseat was consistent with Gregson's testimony that, after Morgan shot Motley, his body flew off the loveseat and landed nearby on the floor. Likewise, the Illinois Supreme Court concluded that the forensic evidence indicating that the shot killing Merkson was fired from a distance of at least 18 inches did not contradict Prater's original testimony that the defendant was four or five feet from Merkson when he shot him.

It bears repeating that Morgan faces a stringent standard. *See Collins v. Gaetz*, 612 F.3d 574, n. 5 (7th Cir. 2010). While some of the physical evidence does conform with

Prater's recantation, that evidence, as noted by the Illinois Supreme Court, also fits in with Prater's trial testimony. In the end, the Illinois Supreme Court was unconvinced that, based on the physical evidence, Prater's recantation was more convincing than his trial testimony. Prater's trial testimony, in light of the physical evidence, may indeed require a "stretch of the imagination," as suggested by the district court. But we cannot conclude that the Illinois Supreme Court's decision to accept one set of events over another, when both are supported by the same physical evidence, is against the clear and convincing weight of the evidence. *See Wood v. Allen*, 130 S.Ct. 841, 849 (2010) *reh'g denied*, 130 S.Ct. 1942 (2010) ("[S]tate-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

Next, the claim of police coercion: as further evidence that Prater's recantation was credible, Morgan points to the testimony that the prosecutor and police coerced Prater into implicating Morgan as the murderer. The Illinois Supreme Court rejected this argument, crediting the police officers' and prosecutor's testimony over testimony offered by Cynthia Ruwe, Rosemary Thomas, and Lemuel Bell. Here, the Illinois Supreme Court explicitly found Ruwe and Thomas incredible, noting that "neither of these witnesses was independent. They both had personal relationships with Prater or [Morgan]."

The Illinois Supreme court's decision to credit the testimony of Sergeants Thomas Whalen and Michael

Flynn and Assistant State's Attorney Thomas Epach over Prater's, Ruwe's, and Bell's testimony is not against the clear and convincing weight of the evidence. This decision properly stemmed from the trial court's in-court appraisal of the witnesses' demeanor and credibility.

Morgan also asserts that Prater's claim of coercion is corroborated by evidence that the same state agents coerced a suspect in an unrelated case. The Illinois Supreme Court, however, like the trial court, declined to consider that evidence noting that "[t]he circuit court has wide discretion to limit the type of evidence it will admit at a postconviction evidentiary hearing." In agreeing with the trial court, the Illinois Supreme Court distinguished the two cases emphasizing that Prater, unlike the suspect in the other case, was never beaten, was not denied access to his attorney, and was not questioned after he asked for his attorney.

The Illinois Supreme Court's refusal to consider evidence relating to other incidents of coercion by the same state agents was not unreasonable within the meaning of § 2254(d)(2). Here, the Illinois Supreme Court distinguished the instant case from the *Johnson* case and found the *Johnson* case too dissimilar to enter into its analysis. We will not accept Morgan's invitation to second guess the Illinois Supreme Court's reasoning and remain unpersuaded that clear and convincing evidence establishes that the state court erred by favoring the state agents' testimony over testimony offered by Bell and Ruwe. Nor will we conclude that the state court erred in rejecting Prater's claim of coercion.

Finally, Morgan points to Motley's and Merkson's violent background and prior convictions for armed robbery in support of Prater's recantation, which claims that Morgan killed Motley in self-defense. Morgan also asserts that Prater's new story provides a more "plausible explanation" for his "otherwise illogical behavior" on the night of the murders.

It was not against the clear and convincing weight of the evidence for the Illinois Supreme Court to reject Prater's new account—even if it was a more "plausible version of events"—in favor of Prater's original testimony, which, as the Illinois Supreme Court noted, "made sense too." Indeed, as the court correctly noted, "plausibility" is not the test. Motley's and Merkson's history of violence merely provides support for another plausible scenario, the rejection of which is not objectively unreasonable. Again, we point out that "[a] decision is not objectively unreasonable unless it falls 'well outside the boundaries of permissible differences of opinion.'" *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

### C.  Morgan's *Brady* Claim

Next we turn to Morgan's *Brady* claim. Morgan argues that the prosecution violated his right to a fair trial under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by providing false or incomplete disclosure of two 1982 drug cases filed against Gregson shortly after the murders occurred and alleged preferential treatment she received on those

charges in exchange for her trial testimony against Morgan. Gregson was arrested on April 16, 1982—after the murders but before Morgan's trial—for possessing a controlled substance and marijuana; she was arrested again on May 4, 1982 and charged with two counts of possessing a controlled substance and one count of possessing marijuana. The charges in both arrests were *nol prossed*.

Morgan had to establish two things to prevail on his *Brady* claim. He first had to show that the government failed to give him evidence favorable to his defense, that would tend to show his innocence, or that could be used to impeach witnesses at trial. *Brady,* 373 U.S. at 87. Second, Morgan had to show that the evidence suppressed was material; that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Carvajal v. Dominguez*, 542 F. 3d 561, 566-67 (7th Cir. 2008) (quoting *Strickler v. Greene,* 527 U.S. 264, 281 (1999)).

Addressing the first *Brady* element, we agree with the district court that the prosecution failed to supply the defense with information during Morgan's trial that was impeaching. The government's failure to disclose the criminal history of Gregson or a promise of leniency—if there was one—deprived Morgan of impeachment material. We now turn to whether the suppressed evidence was material.

Morgan claims that the Illinois supreme Court made two errors—one under § 2254(d)(2) and another under

§ 2254(d)(1)—in concluding that the suppressed evidence was not material. Morgan first submits that the Illinois Supreme Court engaged in an objectively unreasonable determination of facts.

On habeas review, we are, again limited by 28 U.S.C. § 2254(d). Essentially, Morgan must show that the Illinois Supreme Court's determination of facts was unreasonable, "that is, lying well outside the bounds of permissible differences of opinion." *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008) (internal citation omitted). Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Applying this deferential standard of review, we conclude that the Illinois Supreme Court did not violate § 2254(d)(2) when it found that there was no reasonable probability that disclosure of the suppressed evidence would have led to a different result.

We begin by pointing out that there was no direct evidence that Gregson was induced to testify against Morgan in exchange for favorable treatment on her two arrests. In fact, the Illinois Supreme Court found, and the district court agreed, that Morgan's argument that Gregson testified against him in exchange for favorable treatment was "nothing more than unsubstantiated speculation." But even if there were evidence that the State treated Gregson favorably in exchange for her testimony, we would still conclude that the court did not err under § 2254(d)(2). In analyzing whether the

suppressed evidence was material under *Brady*, the court noted that Prater's trial testimony and other independent evidence corroborated Gregson's trial testimony implicating Morgan in the murders. For instance, the court noted that Prater testified that he heard Motley make a remark to Morgan, then heard a shot and saw Morgan step into the kitchen holding the shotgun. The court also noted that Prater testified that he saw Morgan point the gun at Merkson's head, looked away, and heard a shot; he then saw Morgan holding the gun as he stood near Merkson's body. This account, the court recognized, was corroborated by Gregson. Moreover, the court pointed out that when the police encountered Morgan the day after the murders, he did not stop but continued walking and pointed a revolver at the officers. And that, when police officers apprehended Morgan, they found a revolver matching bullets recovered in Prater's apartment and the black notebook that Prater and Gregson identified as the one recovered from Motley's body. Lastly, the court found that the testimony of Prater's downstairs neighbor, Frank Blume regarding the timing of the shots corroborated both Prater and Gregson's chronology of the murders.

The Illinois Supreme Court also attached significance to the independent evidence that corroborated Gregson's trial testimony of Morgan's rape and kidnapping. For example, Gregson testified that Morgan committed two murders, kidnapped her, and struck and punched her, before raping her. This testimony, the court noted, was corroborated at trial by the testimony of the motel clerk that he saw Morgan point a gun at Gregson and throw her headfirst into a car.

After considering the evidence cited above—evidence other than Gregson's trial testimony—the court noted that the "actual significance of . . . [her] criminal charges is questionable," and concluded that no reasonable probability exists that, had the State fully disclosed Gregson's criminal history, the result of the proceeding would have been different. In fact, the court was clear to point out that "[i]n the end, defendant's postconviction petition turned on a single factor: the credibility of Elijah Prater." We do not agree that the Illinois Supreme Court engaged in an objectively unreasonable determination of facts in concluding that the suppressed evidence was not material under *Brady*.

Morgan asserts that the court "failed to undertake the analysis demanded by *Brady*." Again, our review under the "unreasonable application" clause of § 2254(d)(1) is limited to whether the court extended a rule to an inapplicable context or refused to extend a rule to an applicable context. Neither of these situations is present here. After making the threshold determination that *Brady* was violated by nondisclosure, the court went on to address *Brady*'s second prong—whether the suppressed evidence was material. Here, the court properly weighed the significance of Gregson's criminal history and found it "questionable"—concluding that Gregson's trial testimony was corroborated by other evidence and that there is no reasonable probability that the outcome of the proceeding would have been different, had the state disclosed Gregson's criminal history. We will not disturb the Illinois Supreme Court's reasonable application of *Brady*.

### D.  Morgan's *Strickland* Claim

Morgan also contends that he was deprived of his constitutional right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). According to Morgan, his counsel failed to perform the research and investigation necessary to assert a mental state defense—voluntary intoxication and an unreasonable belief of self-defense—at the guilt phase of his trial. Morgan also claims that his counsel was ineffective as a result of being absent during portions of his trial. These absences, according to Morgan, require a presumption of prejudice under *Cronic*, or, alternatively, under *Strickland*. Lastly, Morgan argues that he suffered "overall prejudice" from his counsel's deficient performance. We find that Morgan is not entitled to habeas relief on any of these grounds.

To prevail under *Strickland*, Morgan must demonstrate that his counsel, Wolf Levin, provided deficient assistance and that there was prejudice as a result. *See Strickland*, 466 U.S. at 690. To establish deficient performance, Morgan must show that his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To establish prejudice, Morgan must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The likelihood of a different result must be substantial, not just conceivable. *Id.* at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485 (2010). And establishing on habeas review that a state court unreasonably applied *Strickland* under § 2254(d) is "all the more difficult." *Harrington v. Richter*, 131 S.Ct. 770 (2011).

We need not consider the first prong of the *Strickland* test if we find that counsel's alleged deficiency did not prejudice the defendant. *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001). As the Court noted in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. We heed this advice and now explain why the Illinois Supreme Court did not err under § 2254(d) when it determined that Morgan's claim fails because he suffered no prejudice under *Strickland*.

First, the court correctly identified the *Strickland* standard and then, under the prejudice prong of *Strickland*, considered each mental state defense that Morgan argued should have been presented. Second, after its analysis, the state court concluded that, because none of Morgan's proposed defenses would have been successful, he was not prejudiced by a failure to investigate and present those defenses.

The court recognized that although voluntary intoxication is "normally not a defense to the commission of a crime, evidence that the intoxication was so extreme as to suspend the power of reason may be used to negate the existence of the mental state which is an element of the crime." Considering evidence of Morgan's mental impairments and affidavits from Gregson and Prater, the court found that "nowhere in the affidavits relied upon by defendant is there evidence that defendant's purported intoxication was so severe that he could not form the requisite intent to support a first degree murder conviction." The court also concluded that "there is no reasonable likelihood that testimony that defendant was intoxicated at the time of the murders would have successfully established the defense of voluntary intoxication." Based on the state court's findings, we cannot say that it was unreasonable for the Illinois Supreme Court to conclude that Morgan failed to show a reasonable probability of a different result.

After rejecting the intoxication defense, the Illinois Supreme Court evaluated Morgan's likelihood of success if he had argued that he acted on a belief of self-defense. The court rejected this argument as well, finding that Morgan failed to make a substantial showing that there is a reasonable likelihood that the result of his trial would have been different had be put on that defense.

Again, the Illinois Supreme Court correctly cited and articulated *Strickland*'s standard and properly considered Morgan's proposed self-defense claim under its prejudice

prong. After citing the requirements for a self-defense claim in Illinois, the court concluded that Morgan's claim was barred as a matter of law because Morgan could not demonstrate that "either victim used unlawful force" against Morgan. In fact, the court concluded that the evidence overwhelmingly established that Morgan was the aggressor. Therefore, the court's conclusion that, had Morgan presented a self-defense claim, there is no substantial likelihood that his trial result would have been different and was not based on an unreasonable application of *Strickland*. For the same reasons, the Illinois Supreme Court applied *Strickland* in holding that Morgan was not prejudiced by the absence of a voluntary manslaughter jury instruction.

Morgan's assertion that the Illinois Supreme Court unreasonably determined that he was the initial aggressor also fails. As the Illinois Supreme Court was clear to point out, "there is no evidence of record that, at the time of the shootings, either Merkson or Motley made any threats of use of unlawful force against defendant that would lead a person to reasonably believe that there was an imminent danger of death or great bodily harm that required the use of deadly force in self-defense." In determining that Morgan was the initial aggressor, the court cited that the evidence demonstrates that Motley was shot while sitting on the couch making phone calls; Merkson was shot in the back of the head after Morgan asked him to kneel on the floor; and that at the time of Merkson's shooting, Morgan was armed with a shotgun and Motley's handgun. Given the strength of that evidence, it was certainly not against

the clear weight of the evidence to conclude that Morgan was the aggressor.

Morgan next argues that we should not apply the *Strickland* test but, instead, apply the standard set forth in *United States v. Cronic* because his attorney was absent during the following critical states of his trial: part of voir dire, opening statements, arguments on the admissibility of evidence, and the examination of seven state witnesses. *See United States v. Cronic*, 466 U.S. 648, 654 n. 11 (1984). These absences, Morgan argues, require a presumption of prejudice. We do not agree and find that the *Strickland* test governs Morgan's claim.

Again, to find an error under the "contrary to" clause of § 2254(d)(1), the Illinois Supreme Court must have "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases." *Calloway*, 512 F.3d at 943. The Supreme Court has consistently limited the presumption of prejudice to cases where counsel is physically absent at a critical stage. *See Penson v. Ohio*, 488 U.S. 75, 88 (1988) (applying *Cronic* where defense counsel erroneously moved to dismiss any appeal leaving the petitioner "completely without representation during the appeals court's actual decisional process"); *White v. Maryland*, 373 U.S. 59, 60 (1963) (presuming prejudice where defendant pleaded guilty at a preliminary hearing before he was appointed counsel); *Hamilton v. Alabama*, 368 U.S. 52, 54-55, (1961) (presuming prejudice where defendant was completely without counsel when he pleaded guilty to a capital charge and irrevocably waived other pleas); *see also Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir.

1985) (applying a presumption of prejudice where the defendant's trial counsel was absent during jury deliberations and at the return of the verdicts). Here, a counsel was physically present at all stages of the litigation—Levin's co-counsel, Steven Decker represented Morgan in Levin's absence—and therefore, we cannot conclude that Morgan was denied counsel at critical stages of trial. The Illinois Supreme Court's determination to apply *Strickland*, instead of presuming prejudice under *Cronic*, was not contrary to clearly established federal law.

The Illinois Supreme Court concluded that Morgan did not suffer prejudice per *Strickland* as a result of Levin's absences. The record shows that, during the trial, Levin served as Morgan's primary counsel, conducted the direct examination of two of the three defense witnesses, cross-examined the State's two key eyewitness, and delivered the closing argument. In Levin's absence, Decker conducted jury selection, delivered the opening argument, conducted the direct examination of one defense witness, and cross-examined several State witnesses. In doing so, Decker advanced the defense's theory of the case—that the State could not prove beyond a reasonable doubt that Morgan had committed the crimes for which he was charged.

The Illinois Supreme Court determined that there was no reasonable probability that the outcome of Morgan's trial would have been different had Levin not been absent. This conclusion was not against the clear and convincing weight of the evidence; rather, the court

reasonably concluded that Decker competently filled in for Levin, and that consequently, Morgan was not prejudiced. Since Morgan has not demonstrated *any* prejudice under his ineffective assistance claim, his claim for *overall* prejudice fails. *See Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000) (petitioner could not prevail on his cumulative effect argument because he failed to show that there was even a single error, much less two).

In sum, Morgan is not entitled to habeas relief on the basis of his ineffective assistance of counsel claim.

### E.   Morgan's *Giglio* Claim

Morgan also contends that the State violated his due process rights by presenting the false testimony of Prater and Gregson. *Giglio v. United States*, 450 U.S. 150, 154 (1972). Whether the State violated Morgan's due process rights by a knowing use of perjured Prater testimony turns on Prater's recanted testimony. We have accepted the Illinois Supreme Court's finding that Prater's recantation was incredible. Accordingly, the rejection of Morgan's *Giglio* claim as to Prater was not unreasonable.

Morgan's *Giglio* claim as to Gregson also fails. Here, Morgan relies on circumstantial evidence of a leniency agreement to support his contention that Gregson's testimony was perjured. But even if a leniency agreement existed, it does not follow that Gregson's trial testimony was false. The only evidence that Morgan can muster to support his argument that Gregson's testimony

was false is Prater's recantation. But as we just explained, the State reasonably concluded that Prater's recantation was incredible. The Illinois Supreme Court's rejection of Morgan's *Giglio* claim as to Gregson was not unreasonable.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Morgan's petition for writ of habeas corpus.