NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 9, 2013
Decided March 4, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 13-1119 | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| PATRICK E. HAMPTON,<br>        *Petitioner-Appellant,* | |
| | No. 12-C-186 |
| v. | |
| | **William E. Callahan, Jr.,** *Magistrate Judge.* |
| JAMES SCHWOCHERT,<br>        *Respondent-Appellee.* | |

**O R D E R**

Patrick Hampton is in a Wisconsin prison following his guilty plea and conviction on first-degree reckless homicide charges for the killing of his roommate, Carlton Stovall. His case reaches our court on appeal from the district court's denial of Hampton's petition for a writ of habeas corpus under 28 U.S.C. § 2254. He believes that the Wisconsin courts erred in their application of the rules established in *Miranda v. Arizona*, 384 U.S. 436 (1966) – in particular the rule forbidding the police to re-initiate

communication with someone who has invoked his right to counsel. The district court found that the decision of the state court rejecting that assertion was not an unreasonable application of any U.S. Supreme Court decision, and so it denied Hampton's petition. Bearing in mind the deferential standards that govern our consideration of this field, we find no error in the district court's decision, and so we affirm.

## I

Our account of the facts follows that of the Wisconsin Court of Appeals, which was the last state court to consider Hampton's case; its findings are presumed correct. See 28 U.S.C. § 2254(e)(1); *Wisconsin v. Hampton*, No. 2009AP3040-CR (Wis. Ct. App. Nov. 2, 2010).  After Stovall was found dead, Hampton was arrested and questioned by Detectives Timothy Heier and Jeremiah Jacks. Initially, Hampton refused to say anything; he told Heier and Jacks that he wanted to talk only to Detective Mark Peterson, with whom he had dealt in the past. He also complained that he did not have a lawyer. Nevertheless, Heier and Jacks read Hampton his *Miranda* rights; Hampton confirmed that he understood them; and Hampton proceeded to answer questions for about two hours.

At that point, Hampton cut off the conversation and the following colloquy occurred:

HAMPTON: I'm not trying to be rude or nothing. I just want to talk to a lawyer.

DETECTIVE HEIER: Any specific lawyer you want us to call?

HAMPTON: No. I don't know.

Immediately after that exchange, the audio tape of Hampton's interrogation reflects sounds indicating that the detectives were packing up to leave. This prompted another comment from Hampton and reply from the detective:

HAMPTON: Are you guys gonna leave?

DETECTIVE HEIER: Yeah. If you wanna talk to a lawyer, we're not going to talk to you. … You're in charge. … If you want a lawyer, I respect that and I'll honor that.

Before leaving, however, the detectives informed Hampton that a police officer was going to come into the room to photograph the cuts on his hands. Hampton responded,

"I just don't want you guys to leave right now." He continued, "I really do want to talk to you guys … . I just need some time." Hampton wanted the time to read the Bible and pray. The detectives did not object to his request; they found a Bible for him and left him alone for about an hour.

Heier then returned and once again read Hampton his *Miranda* rights. Hampton reconfirmed that he understood them. Hampton then commented that he did not "want to say the wrong thing," but that he would "talk about some things." He answered questions for another hour, at which time he said that he wanted to end the interview and he was returned to his cell.

It was not until the next day, when Detective Peterson and another officer questioned him again, that Hampton revealed anything incriminating. That morning Hampton received another round of *Miranda* warnings, and he agreed to waive his rights. He did not ask again for counsel, nor did he invoke his right to remain silent. Instead, he confessed to killing Stovall while he (Hampton) was high on drugs.

Hampton's confession led to charges in state court for first-degree reckless homicide. In those proceedings, Hampton moved to suppress his confession. He focused on the continuation of questioning after he first asked for a lawyer (set out in the initial two exchanges above). He argued that the third questioning session, in which he confessed, was not sufficiently attenuated from the first, when the alleged Fifth Amendment violation occurred. The Wisconsin trial court denied the motion after conducting an evidentiary hearing at which Heier and Peterson testified and the state submitted the audio tapes of the interviews. Hampton then pleaded guilty and was sentenced to 25 years' imprisonment.

Hampton appealed from the adverse ruling on the suppression motion to the Wisconsin Court of Appeals. That court found that although Hampton had unambiguously invoked his right to counsel two hours into the interrogation, it was he who initiated further discussion. Citing *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), the court determined that Hampton signaled his desire to discuss Stovall's death when he told the detectives "I just don't want you guys to leave right now," and when he said "I really do want to talk to you guys." The Supreme Court of Wisconsin declined to review that holding.

Hampton then turned to the federal district court, where he filed his petition for a writ of habeas corpus. In the petition, he asserted that the detectives had violated his Fifth Amendment right to counsel when they resumed the interrogation after he had asked for a lawyer. The district court denied the petition, but it granted a certificate of

appealability on "whether the Wisconsin Court of Appeals' finding that Hampton initiated further communications with detectives after invoking his right to counsel was an unreasonable application of *Oregon v. Bradshaw* … and *Edwards v. Arizona,* 451 U.S. 477 (1981)."

**II**

It is Hampton's burden to show that the decision of the Wisconsin Court of Appeals to the effect that it was Hampton who initiated the second session of questioning was an unreasonable application of the law as declared by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1). It is uncontested that Hampton invoked his right to counsel. But in *Edwards* and *Bradshaw,* the Supreme Court of the United States held that it is possible for a defendant who initially invokes his *Miranda* rights to reconsider that position and to initiate a discussion. The police may not be the ones who take the first step. *Edwards,* 451 U.S. at 484-85. Hampton contends in this case that it was indeed the detectives who re-started his interrogation (or perhaps who never really ended it), after he asked for a lawyer. He points to the fact that Detective Heier told him that the cuts on his hands were going to be photographed. Because those cuts were potential evidence of his involvement in Stovall's death, the photographs (Hampton argues) were likely to elicit an incriminating remark from him. But Detective Heier's statement cannot be characterized as interrogation. All he was doing was telling Hampton what was going to happen next, in response to Hampton's question about whether the detectives were leaving. A police officer's response to a suspect's question is not automatically interrogation. *United States v. Hendrix,* 509 F.3d 362, 374 (7th Cir. 2007); *United States v. Briggs,* 273 F.3d 737, 740-41 (7th Cir. 2001). And it was not interrogation here.

Hampton insists alternatively that his statements did not initiate a discussion about the homicide. All he was saying, he contends, is that he did not want the detectives to leave. This comment related only to the logistics of his custody. Moreover, when he said that he wanted to talk to the detectives, he qualified that statement by requesting a break—something that disengaged him from the discussion.

As one can see from the exchanges above, the detectives stopped questioning Hampton and prepared to leave the moment he asked for a lawyer. They resumed speaking to him only to answer his question. That was when Hampton said "I really do want to talk to you guys right now." Both we and our sister circuits have applied *Edwards* to situations like this one. See *Jackson v. Frank,* 348 F.3d 658, 660-62 & n.4 (7th Cir. 2003) (suspect asked for counsel, detective said he could not continue interrogation and gathered materials to leave, then suspect said he wanted to talk now); *United States*

*v. Velasquez,* 885 F.2d 1076, 1085-86 (3d Cir. 1989); see also *United States v. Clay,* 320 F. App'x 384, 388-89 (6th Cir. 2009).

Hampton also asserts that even if he re-initiated the discussion, his waiver of his right to counsel after Detective Heier returned was not knowing and voluntary. The fresh set of *Miranda* warnings that the detective provided was not enough, Hampton believes, based on *Arizona v. Roberson,* 486 U.S. 675, 686 (1988). In *Roberson,* however, the new warnings followed the resumption of interrogation by the police. 486 U.S. at 678. *Roberson* expressly distinguished the case of a suspect's restarting the discussion. In that situation, the Court said, further questioning is "perfectly valid." *Id.* at 687. This court too has held that a suspect's re-initiation of questioning, along with new *Miranda* warnings, is enough to satisfy *Edwards* and *Bradshaw.* See *United States v. Huerta,* 239 F.3d 865, 873 (7th Cir. 2001).

Finally, Hampton contends that the Wisconsin court did not consider the totality of the circumstances surrounding the new round of interrogation, but he does not identify precisely what the court failed to consider. In fact, the Wisconsin court recognized that it was required to consider all of the circumstances. It discussed the length and substance of the questioning up to that point, it quoted Hampton's and the detectives' statements, and it remarked that the detectives honored Hampton's request for a break during which he could read the Bible and think in peace. Hampton's real disagreement with the Wisconsin court seems to be with how it weighed those factors. That is not a basis for collateral relief. The question is not whether this court would have arrived at a different conclusion. It is whether the last state court's decision was reasonable. See *Coleman v. Hardy,* 690 F.3d 811, 816-17 (7th Cir. 2012). It was.

We therefore AFFIRM the judgment of the district court.