In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2466

CHE B. CARTER,

*Petitioner-Appellant,*

*v.*

KEITH BUTTS,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-00886-SEB-DML — **Sarah Evans Barker**, *Judge.*

ARGUED MAY 21, 2014 — DECIDED JULY 25, 2014

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Che B. Carter ("Carter") appeals the
district court's denial of his petition for a writ of habeas corpus
under 28 U.S.C. § 2254. He contends that his appellate counsel
rendered ineffective assistance by failing to challenge the
attempted murder jury instruction given at his trial and that
this unduly prejudiced him. Carter argues that the Indiana
Supreme Court unreasonably applied Supreme Court prece-
dent when it determined that he suffered insufficient prejudice

to warrant relief. For the reasons that follow, we affirm the district court's decision to deny Carter's petition for a writ of habeas corpus.

## I. BACKGROUND

On June 20, 1990, Carter went to the home of Donna M. Stegemiller ("Stegemiller") because she had filed a small claims case against his mother. Carter asked to discuss the case with Stegemiller on her porch, then forced his way into Stegemiller's home and started to strangle her. Carter held Stegemiller down and struck her in the head with a tire iron. Carter then shouted for his accomplice, Wayne Mitchell ("Mitchell"), to come into the house. Carter held Stegemiller down and removed rings from her fingers while Mitchell raped her. Before she lost consciousness, Stegemiller saw Carter and Mitchell taking a stereo speaker from her home and heard one of the men tell the other, "[M]ake sure she's dead before we leave because she can identify us." Carter and Mitchell removed the telephones from Stegemiller's house so that she would be unable to call for help. When they left, they locked and barricaded the doors so that Stegemiller could not leave her home or seek medical attention. Stegemiller survived, but sustained serious injuries.

### A. Carter's Trial

At trial, the government introduced evidence of Carter's intent to kill Stegemiller. The first person who spoke to Stegemiller after she was attacked testified that Stegemiller told him she heard one of her attackers say, "[M]ake sure the bitch is dead before we leave." The first police officer at the scene also testified that Stegemiller told him she heard,

"[D]on't leave until she is dead." Stegemiller was not sure, however, whether Carter or Mitchell made this statement.

Without objection from the defense, the court gave the following attempted murder jury instruction:

> To convict the defendant the State must have proved each of the following elements: The defendant[] … 1. Knowingly 2. Engaged in conduct by striking Donna M. Stegemiller on or about her head by means of a deadly weapon, that is a tire tool and strangling her neck rendering her unconscious. 3. That the conduct was a substantial step toward the commission of the crime of murder: that is the knowing and intentional killing of another human being. If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

In his closing argument, the prosecutor acknowledged that in order for the jury to convict the defendant of attempted murder, the State needed to prove that Carter "intended to kill" Stegemiller. The prosecutor argued that hitting Stegemiller in the head with a tire iron and strangling her demonstrated such an intent. He also pointed to the statement made by Carter or Mitchell—"make sure she's dead before we leave because she can identify us"—as well as the fact that Carter and Mitchell locked the doors and took Stegemiller's phones so that she would be unable to seek help as further evidence of their "intent" to kill Stegemiller. In defense counsel's closing argument, he reiterated to the jury that the State had to prove that Carter intended to kill the victim in order to convict him of attempted murder.

On March 19, 1991, a jury convicted Carter of felony burglary, robbery, rape, and attempted murder. He was sentenced to a total of ninety years.[1]

### B. The Indiana Supreme Court's Decision in *Spradlin v. State*

Less than a month after Carter's conviction, the Indiana Supreme Court held that "an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991). The court concluded that in an attempted murder case, it is reversible error to fail to instruct a jury that to convict, the jury must find that the defendant intended to kill the victim. *Id.* at 951.

### C. Post-Conviction Proceedings

In March 1992, Carter's appellate attorney, Belle Choate ("Choate"), filed the opening brief in Carter's direct appeal of his attempted murder conviction. Though she raised several issues on appeal, she failed to argue that the attempted murder jury instruction given at Carter's trial constituted fundamental error under *Spradlin*, requiring reversal. Carter lost his appeal.

On November 13, 2006, Carter filed an amended petition for post-conviction relief, in which he argued that Choate

---

[1] Carter's sentence was later revised, resulting in an aggregate sentence of sixty years.

rendered ineffective assistance by failing to argue that the attempted murder jury instruction given at his trial violated *Spradlin*. The post-conviction trial court denied relief, finding that "[appellate counsel's] work on [Carter's] case was well within an objective standard of reasonableness based on 'prevailing professional norms,'" but the Indiana Court of Appeals reversed. It stated, "If Carter experienced *any* prejudice as a result of his counsel's failure to raise the issue [of the erroneous attempted murder jury instruction], … we are compelled to find that he received the ineffective assistance of counsel." The court determined that Choate's "decision to omit that argument resulted in deficient performance," and concluded "that Carter was prejudiced as a result of his attorney's error."

On transfer, the Indiana Supreme Court vacated the appellate court's decision and denied Carter's petition for post-conviction relief. In reaching its decision, the court applied the two-part ineffective assistance of counsel test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The Indiana Supreme Court "assume[d] for the sake of argument … that Choate should have argued that the attempted murder instruction was defective," but ultimately concluded that "Carter did not suffer sufficient prejudice to warrant setting aside the [jury's] verdict." The court stated:

> While the instruction that attempted murder required a knowing step toward an intentional killing was substandard, it is apparent that the jury was told what the law required. During closing argument, both Carter and the State argued to the jury that the State was required to prove intent to kill in order to convict Carter

of attempted murder. The prosecutor declared during argument that the State had to prove each defendant "intended to kill" the victim and pointed to evidence that the prosecutor believed demonstrated [each man's] intent with regard to the attempted murder charge. He went on to point to the acts of hitting the victim in the head with a tire iron and strangling her as acts that were substantial steps toward killing the victim but that "simply failed" to achieve that result and that "additional evidence" of their intent was the statement, made by [Carter or Mitchell], that they had to kill the victim and could not let her live because she could identify them and their failure to seek any medical help for her. Most significantly, [the prosecutor] told the jury that to convict the defendants of attempted murder, the State had to prove that each man, either aiding, abetting or directly as a principal intended—committed some act, intended to kill [Stegemiller]; and it was only for some reason not of their own doing that they failed to achieve that objective … . Defense counsel also argued that the state had to prove that Carter intended to kill the victim and that the evidence did not support a conclusion that he acted with that intent because, although Carter could have killed the victim, he did not do so. As the jury commenced its deliberations, therefore, it had before it these explanations about intent, an instruction that Carter's knowing actions must have constituted a substantial step towards an intentional killing, and the evidence described above. We conclude that there was

insufficient prejudice flowing from Choate's performance to warrant relief.

Carter then filed a petition in the Southern District of Indiana for a writ of habeas corpus, again asserting that Choate's performance violated his Sixth Amendment right to effective assistance of counsel. The district court denied his petition, holding that "[t]he [Indiana] Supreme Court's correct application of *Strickland* renders federal habeas relief unavailable to Carter on his claim that he was denied his Sixth Amendment right to effective assistance of counsel in connection with his direct appeal." He now appeals to this court.

## II. DISCUSSION

### A.  Habeas Corpus Review

We review the district court's decision to deny Carter's petition for a writ of habeas corpus de novo, *Bolton v. Akpore*, 730 F.3d 685, 693 (7th Cir. 2013), and our review is limited by the terms of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). P.L. 104-132, 110 Stat. 1214. "[A]lthough we technically hear this appeal from the district court, our inquiry focuses entirely on what occurred in the state court," *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013), and we look to "the decision of the last state court to rule on the merits of the petitioner's claim." *McCarthy v. Pollard*, 656 F.3d 478, 483 (7th Cir. 2011). Therefore, our review begins with the decision of the Indiana Supreme Court.

Under AEDPA, we may only grant habeas relief based on a claim of legal error if the decision "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 131 S. Ct. 770, 783–84 (2011). We may not issue a writ "simply because [we] conclude[] … that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411 (2000); *Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2002). This demanding standard allows us to issue a writ only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." *Harrington,* 131 S. Ct. at 786.

### B.  Carter's Ineffective Assistance of Counsel Claim

Carter contends that Choate's failure to challenge the attempted murder jury instruction given at his trial violated his Sixth Amendment right to effective assistance of counsel. The Sixth Amendment protects the "fundamental right to a fair trial." *Strickland,* 466 U.S. at 684. It entitles a defendant to the effective assistance of counsel both at trial and during his first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). To prove ineffective assistance of counsel, a defendant must meet the two-part test outlined in *Strickland.* 466 U.S. at 687. First, the defendant must show that counsel's performance was deficient and fell below an objective standard of reasonableness. *Id.* at 687–88. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." *Id.* at 687. Next, the defendant must demonstrate that counsel's deficient performance prejudiced his defense. *Id.* at 692. "It is not enough for the defendant to show that the errors had some conceivable

effect on the outcome of the proceeding." *Id.* at 693. Rather, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that suffices to undermine confidence in the outcome of the trial proceedings. *Id.* A defendant's failure to establish either prong of the test is fatal to his ineffective assistance of counsel claim. *Rastafari,* 278 F.3d at 688.

### C.  The Indiana Supreme Court's Opinion

The Indiana Supreme Court focused on the second part of the *Strickland* test, the prejudice prong. It acknowledged that the attempted murder jury instruction given at Carter's trial was "substandard" and assumed that Choate should have objected to the instruction on appeal. However, it denied Carter's ineffective assistance of counsel claim since it found "insufficient prejudice flowing from Choate's performance to warrant relief." The court reasoned that while the attempted murder jury instruction "was substandard, it [was] apparent that the jury was told what the law required."

### D.  Our Review

When reviewing the Indiana Supreme Court's decision, we grant the court "a deference and latitude that [is] not in operation when the case involves review under the *Strickland* standard itself." *Harrington,* 131 S. Ct. at 785. "The question is not whether [we believe] the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine

that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (internal quotations and citations omitted). "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786.

Applying this highly deferential standard, we do not find that the Indiana Supreme Court unreasonably applied clearly established federal law; rather, we find that the Indiana Supreme Court reasonably concluded that Carter was not sufficiently prejudiced by Choate's failure to challenge the attempted murder jury instruction to warrant relief. The Indiana Supreme Court correctly acknowledged the *Strickland* standard as controlling and applied it, explaining that it would "assess[] the likelihood of prejudice" to Carter. It acknowledged that the language of the attempted murder jury instruction was imperfect, but found that it did not sufficiently prejudice Carter to warrant relief. The court reasoned that the jury instructions as a whole, coupled with the evidence presented at trial as well as statements made by the prosecution and defense during closing arguments, made clear to the jury that it was required to find that Carter intended to kill Stegemiller in order to convict him of attempted murder. Therefore, the court determined that the result of Carter's appeal would have been the same absent Choate's failure to challenge the jury instruction, defeating his ineffective assistance of counsel claim.

While Choate's performance may well have been deficient, we find that the Indiana Supreme Court's conclusion that Carter failed to satisfy the prejudice prong of the *Strickland* test was not an unreasonable one.

### III. CONCLUSION

Therefore, we AFFIRM the decision of the district court to deny Carter's petition for a writ of habeas corpus.